IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| EDWARD GELIN, *et al.*, | * | |
| Plaintiffs, | * | |
| vs. | * | Civil Action No. ADC-16-3694 |
| BALTIMORE COUNTY, MARYLAND, *et al.*, | * | |
| Defendants. | * | |

## **MEMORANDUM OPINION**

The Court will address two pending motions in this Memorandum Opinion. First, Defendant/Third-Party Defendant, Correct Care Solutions, LLC ("CCS"), moves this Court to dismiss the Third-Party Complaint of Defendants/Third-Party Plaintiffs, Baltimore County, Maryland, Deborah Richardson, Michael Salisbury II, Michelle Rawlins, Nicholas Quisguard, Myesha White, Joseph Lux, Gregory Lightner, Carl Luckett, and John and Jane Does 1 to 8 (collectively, "County Defendants"), for Indemnification (Count I) and Contribution (Count II) (the "Motion to Dismiss") (ECF No. 75). Second, Plaintiffs Edward and Deborah Gelin filed a Motion for Relief, asking this Court to vacate its previous order dismissing Defendant Kyle Shuman, a CCS employee (ECF No. 85). After considering each of the motions and responses thereto, the Court finds that no hearing is necessary. *See* Loc.R. 105.6 (D.Md. 2018). For the reasons stated herein, the Court will GRANT CCS's Motion to Dismiss (ECF No. 75) and DENY Plaintiffs' Motion for Relief (ECF No. 85).

### FACTUAL BACKGROUND

When reviewing a motion to dismiss, this Court accepts as true the facts alleged in the

1

challenged complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). This lawsuit arises out of the death of Ashleigh Gelin on November 14, 2013, when she was incarcerated in the Baltimore County Detention Center ("BCDC"). ECF No. 12 at 5, ¶¶ 1, 4. Ms. Gelin was admitted to BCDC on November 4, 2013. *Id.* at 12, ¶ 30. At the time, CCS provided all health care services to inmates incarcerated at BCDC. *Id.* at 7, ¶ 10. Upon admission, Ms. Gelin underwent a medical intake screening and initial health assessment conducted by CCS. *Id.* at 12–13, ¶¶ 31–38. CCS noted that Ms. Gelin had a history of mental illness and treatment for bipolar disorder and that she exhibited signs of opiate and benzodiazepine addiction, withdrawal, bipolar disorder, depression, and psychosis. *Id.* ¶¶ 31–35. Nevertheless, BCDC and CCS failed to timely refer Ms. Gelin to mental health professionals for evaluation, place her on "special observation status" while awaiting evaluation, provide her with medications for her mental illnesses, and separate her from abusive fellow inmates. *Id.* at 13–15, ¶¶ 40–42, 44–46, 48, 50, 53–54. On November 14, 2013, Ms. Gelin took her own life. *Id.* at 15–16, ¶¶ 55, 58.

## Procedural Background

On November 11, 2016, Ms. Gelin's parents, Plaintiffs Edward and Deborah Gelin, filed suit on behalf of themselves and as personal representatives of Ms. Gelin against Baltimore County, Maryland, Baltimore County Sheriff Jay R. Fisher, and BCDC employees Kyle Shuman, Roselor Saint Fleur, Victoria Titus, Jennifer Sevier, Diane Bahr, Michael Salisbury II, Michelle Rawlins, Nicholas Quisguard, Myesha White, Joseph Lux, Gregory Lightner, Carl Luckett, and John and Jane Does 1 to 10. ECF No. 1. The Complaint alleged the following counts: violations of Ms. Gelin's constitutional rights under 42 U.S.C. § 1983 against all individually named Defendants (Counts I–III); violations of Ms. Gelin's constitutional rights under § 1983 against Baltimore County and Sheriff Fisher (Count IV); violations of the Maryland Declaration of Rights

2

against all individually named Defendants (Counts V–VI); Negligence, Gross Negligence, and Wrongful Death against all individually named Defendants (Counts VII–IX); and Negligent Hiring, Retention, and/or Supervision against Baltimore County, Sheriff Fisher, and Doe Defendants 1 to 10 (Count X). *Id.* at 19–40, ¶¶ 87–182.

On February 8, 2017, Plaintiffs filed an Amended Complaint, in which they replaced Sheriff Fisher with BCDC Director Deborah Richardson, added CCS as a defendant, and amended to reflect that Defendants Shuman, Saint Fleur, Titus, Sevier, and Bahr were employees of CCS and acting as agents of CCS and BCDC at the time of Ms. Gelin's death. ECF No. 12 at 7–9, ¶¶ 10–17. Plaintiffs maintained the same ten counts as set forth in the initial Complaint but amended Count X to include CCS. *Id.* at 42–43, ¶¶ 180–85.

On March 7, 2017, CCS filed a Motion to Dismiss. ECF No. 17. On March 21, 2017, Plaintiffs filed an opposition, ECF No. 21, and CCS filed a reply on March 28, 2017, ECF No. 22. In a memorandum opinion and order dated September 5, 2017, this Court granted CCS's Motion to Dismiss for failure to state a claim.[1] ECF Nos. 24, 25. Thereafter, the individual CCS employees, Defendants Shuman, Saint Fleur, Titus, Sevier, and Bahr, filed Motions to Dismiss on November 7, 2017 and November 20, 2017. ECF Nos. 42, 48. On December 8, 2017, Plaintiffs filed an opposition to the Motions, ECF No. 51, and the CCS employees filed a joint reply on December 22, 2017, ECF No. 54. On August 1, 2018, this Court issued a memorandum granting the individual CCS employees' Motions to Dismiss for insufficient service of process. ECF No. 55.[2]

---

[1] The Court also denied Defendant Baltimore County's Motion to Dismiss all counts against Ms. Richardson and Doe Defendants 1 to 8 (ECF No. 16). ECF No. 24 at 5–9.

[2] On September 10, 2018, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States District Court for the District of Maryland and upon consent of all parties, this case

3

On October 1, 2018, Plaintiffs and the County Defendants filed a Consent Motion for Leave to File a Third-Party Complaint. ECF No. 68. On the same day, the County Defendants filed the Third-Party Complaint against CCS alleging two counts: Indemnification (Count I) and Contribution (Count II). ECF No. 66. The Court granted the consent motion on October 2, 2018. ECF No. 69.

On December 14, 2018, CCS filed its Motion to Dismiss the Third-Party Complaint. ECF No. 75. On January 11, 2019, the County Defendants filed an opposition, ECF No. 79, and CCS replied on February 22, 2019, ECF No. 84.

On March 27, 2019, Plaintiffs filed the Motion for Relief, asking the Court to vacate its August 1, 2018 order dismissing Defendant Shuman for insufficient service of process. ECF No. 85. The Court need not wait for a response.

These matters are now briefed, and the Court has reviewed CCS's Motion to Dismiss and Plaintiffs' Motion for Relief, as well as the responses thereto. For the following reasons, CCS's Motion to Dismiss (ECF No. 75) will be GRANTED and Plaintiffs' Motion for Relief (ECF No. 85) will be DENIED.

## DISCUSSION

### A. CCS's Motion to Dismiss

1. <u>Standards of Review</u>

    a. Motion to Dismiss for Lack of Subject Matter Jurisdiction

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a

---

was transferred to United States Magistrate Judge A. David Copperthite for all proceedings. ECF No. 60.

complaint. *See Davis v. Thompson*, 367 F.Supp.2d 792, 799 (D.Md. 2005). The plaintiff bears the burden of proving, by a preponderance of the evidence, the existence of subject matter jurisdiction under Rule 12(b)(1). *Demetres v. E. W. Constr., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). A 12(b)(1) motion should only be granted if the "material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Ferdinand-Davenport v. Children's Guild*, 742 F.Supp.2d 772, 777 (D.Md. 2010) (quoting *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999)).

A challenge to jurisdiction under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint are not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted). In a facial challenge, a court will grant a motion to dismiss for lack of subject matter jurisdiction "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis*, 367 F.Supp.2d at 799 (citation omitted). Where the challenge is factual, however, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. The court, therefore, "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004).

b. Motion to Dismiss for Failure to State a Claim

The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint must contain "sufficient factual matter, accepted as

5

true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* An inference of a mere possibility of misconduct is not sufficient to support a plausible claim. *Id.* at 679. As stated in *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (internal citations omitted). Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

2. CCS's Motion to Dismiss

In Counts I and II of the Third-Party Complaint, the County Defendants seek indemnification and contribution from CCS in the event that they are found liable to Plaintiffs "for the actions, inactions or omissions outlined in the Plaintiffs['] Complaint and Amended Complaint." ECF No. 66 at 6–7, ¶¶ 17, 20. The Court will address each Count in turn.

a. Indemnification (Count I)[3]

The County Defendants seek indemnification from CCS for Counts VII (negligence), IX

---

[3] Although the Third-Party Complaint appears to seek indemnification from CCS for all claims asserted by Plaintiffs, the County Defendants acknowledge in their opposition that they only seek indemnification for three of Plaintiffs' claims: Negligence (Count VII), Wrongful Death (Count IX), and Negligent Hiring, Retention, and/or Supervision (Count X). ECF No. 79 at 2 ("CCS does not allege in its Motion to Dismiss that the indemnification clause does not cover claims under count VII (negligence), count IX (wrongful death) or count X (negligent hiring, retention, and/or supervision and on the other hand, the Third-party Plaintiffs do not contend that claims under 42

6

(wrongful death), and X (negligent hiring, retention, and/or supervision) based on an indemnification provision in a contract between Baltimore County and CONMED, Inc., CCS's corporate predecessor, for the provision of medical and mental health services at BCDC. ECF No. 79 at 2, 4–5. The contract, dated March 29, 2007 and later amended on November 20, 2012, contains a provision labeled "Indemnification" that states in relevant part:

> The Contractor shall defend, indemnify and hold harmless the County, its employees, agents and officials from any and all liabilities, claims, suits, or demands (including reasonable attorney's fees) which may be incurred or made against the County, its employees, agents or officials resulting from any act or omission committed in the performance of the duties imposed by and performed under the terms of this Agreement by the Contractor or anyone under agreement with the Contractor to perform duties under this Agreement. The Contractor shall not be responsible for acts of gross negligence or willful misconduct committed by the County[,] its agents, employees, consultants, or officials.

ECF No. 79-1 at 7.

In its Motion, CCS makes two arguments as to why dismissal of the indemnification claim is appropriate: (1) the County Defendants failed to allege the elements necessary to prove indemnity; (2) the County Defendants failed to file the claim in the Health Care Alternative Dispute Resolution Office ("HCADRO") pursuant to the Maryland Health Care Malpractice Claims Act ("HCMCA"), which is a prerequisite to filing in this Court. ECF No. 75-1 at 13–19. The Court agrees with CCS.

First, CCS contends that the County Defendants fail to state a claim for indemnification in the Third-Party Complaint because they "do not provide any basis for their entitlement to relief, other than a conclusory allegation that, if they are liable to the Plaintiffs, they are entitled to . . .

---

U.S.C. § 1983, Maryland Declaration of Rights[,] or gross negligence are covered by the indemnification clause."). Thus, the Court will only consider whether the County Defendants are entitled to indemnification for those three counts.

indemnification from CCS." ECF No. 75-1 at 16. As CCS correctly notes, the County Defendants failed to allege or identify any term or agreement which entitles them to indemnification in the Third-Party Complaint. ECF No. 84 at 3. Rather, the County Defendants attempt to supplement the Third-Party Complaint by making new allegations in the opposition that they are entitled to indemnification based on a provision in the contract between Baltimore County and CCS's corporate predecessor. ECF No. 79 at 2.

"[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Yesko v. Fell*, No. ELH-13-3927, 2014 WL 4406849, at *7 (D.Md. Sept. 5, 2014) (quoting *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F.Supp. 1053, 1068 (D.Md. 1991)) (internal quotation marks omitted). A plaintiff is "bound by the allegations contained in [the] complaint." *Zachair, Ltd. v. Driggs*, 965 F.Supp. 741, 748 n.4 (D.Md. 1997). The Court must, therefore, consider only the allegations contained in the Third-Party Complaint, which provides no basis for indemnification.

Even if the County Defendants intended to base their claim on the common law right to indemnification, as CCS notes, the claim fails. "Maryland law recognizes a right to indemnity independent of any contract where the character of one tortfeasor's conduct is significantly different from that of another who is also liable for the same damages. A party may be entitled to receive indemnification where his own conduct, although negligent, is considered to be passive or secondary." *Pyramid Condo. Ass'n v. Morgan*, 606 F.Supp. 592, 595 (D.Md. 1985) (citations omitted). In *Pyramid Condominium Ass'n v. Morgan*, this Court considered whether the third-party plaintiffs had sufficiently stated a claim for indemnification and noted:

> The determination of whether a tortfeasor's negligence is active or passive must be made by referring to the plaintiff's complaint against the defendant seeking to implead the third party. If the plaintiff's complaint alleges conduct by the third-party plaintiff that

> would constitute active negligence, or if it is clear from the circumstances revealed by the plaintiff's complaint that the defendant's (third-party plaintiff) liability would only arise, if at all, from proof of active negligence, there is no basis for an indemnity claim and dismissal of the claim is appropriate.

*Id.* at 596 (citations omitted).

Review of the Amended Complaint in the instant case reveals numerous allegations that the County Defendants were actively negligent. Specifically, the Amended Complaint contains allegations that the County Defendants failed to conduct timely watch tour rounds or an inmate count in accordance with BCDC policies and failed to respond to other inmates' attempts to warn BCDC staff about Ms. Gelin's impending death. ECF No. 12 at 16–17, ¶¶ 59, 60, 64–66, 68–70. Thus, it is clear from the Amended Complaint that the County Defendants' liability would only arise from proof of active negligence, rendering dismissal of the third-party indemnification claim proper.

Even if the County Defendants had stated a claim for indemnification, dismissal is required because the County Defendants did not satisfy the requirements of the HCMCA by filing with HCADRO first. The HCMCA "reflects Maryland's strong public policy that medical malpractice claims alleging damages in excess of a certain jurisdictional amount should be subject to arbitration and other prerequisites prior to being litigated in court." *Lewis v. Waletzky*, 576 F.Supp.2d 732, 735 (D.Md. 2008) (citing *Grp. Health Ass'n v. Blumenthal*, 295 Md. 104, 113 (1983)). The relevant portion of the statute states:

> (a)(1) All claims, suits, and actions, including cross claims, third-party claims, and actions under Subtitle 9 of this title, by a person against a health care provider for medical injury allegedly suffered by the person in which damages of more than the limit of the concurrent jurisdiction of the District Court are sought are subject to and shall be governed by the provisions of this subtitle.
>
> (2) An action or suit of that type may not be brought or pursued in

any court of this State except in accordance with this subtitle.

MD. CODE ANN., CTS. & JUD. PROC. § 3-2A-02(a)(1)–(2) (West 2019). Sections 3-2A-03 and 3-2A-04 govern the makeup and operation of HCADRO. *Id.* §§ 3-2A-03 to -04.

The HCMCA provides a list of "health care provider[s]" that are covered by the statute, including "a related institution as defined in § 19-301 of the Health–General Article" of the Maryland Code. *Id.* § 3-2A-01(f)(1). Section 19-301 of the Health–General Article defines a "related institution" as "an organized institution, environment, or home" which "[m]aintains conditions or facilities and equipment to provide domiciliary, personal, or nursing care for 2 or more unrelated individuals who are dependent on the administrator, operator, or proprietor for nursing care or the subsistence of daily living in a safe, sanitary, and healthful environment." MD. CODE ANN., HEALTH–GEN. § 19-301(o)(1)(i) (West 2019). The HCMCA also defines "medical injury" as "injury arising or resulting from the rendering or failure to render health care." CTS. & JUD. PROC. § 3-2A-01(g). Notably, the County Defendants do not dispute that CCS is a "health care provider" under the HCMCA, nor do they contest that their Third-Party Complaint involves claims for medical injury.

"To determine the applicability of the HCMCA, 'the critical question is whether the claim is based on the rendering or failure to render health care[,] not the label placed on the claim . . . .'" *Elnadi v. Upinder Singh, DDS, PC*, No. ELH-12-1762, 2013 WL 1855977, at *5 (D.Md. Apr. 30, 2013) (quoting *Brown v. Rabbit*, 300 Md. 171, 175 (1984)). "A claim that 'cannot be sustained independently of proof of negligence on the part of a health care provider' is subject to the [HCMCA]". *Id.* at *6 (quoting *Adler v. Hyman*, 334 Md. 568, 574 (1994)). The County Defendants attempt to construe their indemnification claim as a mere contract claim and contend that the HCMCA is inapplicable in this case as they only "seek to enforce the indemnification

provisions of the contract" between CCS and the County. ECF No. 79 at 4–5. However, this argument is unpersuasive in light of *Group Health Ass'n v. Blumenthal*, 295 Md. 104 (1983). In *Blumenthal*, the Maryland Court of Appeals considered several questions of law certified by the United States District Court for the District of Maryland relating to the HCMCA, including whether the defendant health group's third-party claim against the doctor for indemnification and contribution were subject to mandatory arbitration. 295 Md. at 109–10. The Court of Appeals answered in the affirmative, holding that the health group's "claim against [the doctor] clearly f[ell] within the purview of § 3-2A-02(a)" because the third-party claim "[wa]s for a medical injury." *Id.* at 116. The Court reasoned that "if [the doctor wa]s found to have been negligent in rendering medical care to [the plaintiff], and liability for that negligence [wa]s imputed to [the health group], then [the health group] w[ould] have suffered a medical injury as defined in § 3-2A-01(f)." *Id.*

Here, the third-party claim for indemnification "falls squarely within the ambit of the [HCMCA], notwithstanding its label as a claim for [indemnification]; it clearly constitutes a claim for recovery based on physical injuries resulting from [CCS's] alleged failure to render proper health care to [Ms. Gelin]." *Elnadi*, 2013 WL 1855977, at *6 (holding that the patient's counterclaim for breach of contract was subject to arbitration under the HCMCA and granting the defendant dentist's motion to dismiss). The County Defendants clearly base their third-party claim on the allegations that "CCS . . . [was] aware or should have been aware that [Ms. Gelin] should have been provided with necessary medical treatment" and that CCS was "deliberately indifferent to [Ms. Gelin's] serious medical needs." ECF No. 66 at 6, ¶¶ 13–14. Because the indemnification claim "cannot be sustained independently of proof of negligence on the part of" CCS, the claim is subject to the HCMCA. *Elnadi*, 2013 WL 1855977, at *5 (citation and internal quotation marks

11

omitted).

Accordingly, because the County Defendants have failed to state a claim for indemnification, CCS's Motion to Dismiss is GRANTED as to Count I. Even if the County Defendants had stated a plausible claim for indemnification, dismissal is required as the County Defendants cannot maintain their claim in this Court until they satisfy the requirements of the HCMCA.

b. Contribution (Count II)

In addition to indemnification, the County Defendants also seek contribution from CCS.[4] However, for many of the reasons stated above, the County Defendants' claim for contribution fails.

First, much like the indemnification claim, the County Defendants fail to state a claim for contribution because the Third-Party Complaint is devoid of any allegations that CCS and the County Defendants share common liability. "In Maryland, contribution is available among joint tortfeasors under the Uniform Contribution Among Tort-Feasors Act." *Richards v. Freeman*, 179 F.Supp.2d 556, 560 (D.Md. 2002). "[C]ontribution rests on common liability, not on joint negligence or joint tort. Common liability exists when two or more actors are liable to an injured party for the same damages, even though their liability may rest on different grounds." *Id.* (quoting *Parler & Wobber v. Miles & Stockbridge, P.C.*, 359 Md. 671, 686 (2000)) (internal quotation marks omitted).

---

[4] Whereas the County Defendants acknowledged that they sought indemnification on only three counts, neither the Third-Party Complaint nor the opposition indicates whether they seek contribution on only those same counts. *See* ECF No. 79 at 2. Thus, the Court will assume that the County Defendants seek contribution on all claims asserted in the Amended Complaint.

12

Here, the County Defendants have failed to plead sufficient factual content to permit the Court to determine whether there is common liability between them and CCS and, thus, whether CCS can be held liable for contribution on any of Plaintiffs' claims. The Third-Party Complaint states that the County Defendants and CCS "were aware or should have been aware" of Ms. Gelin's mental condition and medical needs and that "health care personnel and correction officers were deliberately indifferent to her known serious medical needs," ECF No. 66 at 6, ¶¶ 13–14, but such allegations are "'naked assertions' devoid of 'further factual enhancement,'" *Iqbal*, 556 U.S. at 678. Additionally, the County Defendants cannot be entitled to contribution for damages stemming from Count X (Negligent Hiring, Retention, and/or Supervision) as this Court previously determined that CCS had no liability to Plaintiffs on that claim and ultimately dismissed CCS from the action. *Parler & Wobber*, 359 Md. at 686 ("We have held that, in situations where only one potential defendant is sued by a plaintiff, that defendant's right to contribution from a third party is predicated on the impleaded party's direct liability to the plaintiff.").

Even if the County Defendants had stated a claim for contribution, their claim would still be dismissed for failure to comply with the requirements of the HCMCA prior to filing in this Court, as discussed *supra*. Furthermore, the Court notes that had the County Defendants stated a claim for contribution and satisfied the requirements of the HCMCA, they would still be precluded from contribution on the Plaintiffs' constitutional claims brought pursuant to 42 U.S.C. § 1983 and the Maryland Declaration of Rights as those statutes do not provide rights for contribution. *Hepburn ex rel. Hepburn v. Athelas Inst., Inc.*, 324 F.Supp.2d 752, 756–58 (D.Md. 2004) ("§ 1983 does not create a right to contribution. . . . Though the [Maryland] Contribution Act codifies a general contribution right, there is no indication that it applies to Maryland State Constitutional

torts, which unlike common law torts, are state law claims that arise when government officials violate the Maryland Declaration of Rights.").

Accordingly, because the County Defendants have failed to state a claim for contribution, CCS's Motion to Dismiss is GRANTED as to Count II. Even if the County Defendants had stated a plausible claim, they have no right to contribution on the constitutional claims brought pursuant to 42 U.S.C. § 1983 or the Maryland Declaration of Rights, and they cannot maintain their contribution claim in this Court until they comply with the HCMCA.

### B. Plaintiffs' Motion for Relief

1. Standard of Review

The pending Motion for Relief (ECF No. 85) implicates Rule 60(b) of the Federal Rules of Civil Procedure, which authorizes a court to grant relief from a final judgment for five enumerated reasons or for "any other reason that justifies relief." Fed.R.Civ.P. 60(b)(1)–(6). Preliminarily, "[u]nder Rule 60(b), a party may seek relief from a final judgment or order by [first] showing timeliness, a meritorious claim or defense, and a lack of unfair prejudice to the opposing party." *Mizrach v. United States*, WDQ-11-1153, 2015 WL 7012658, at *4 (D.Md. Nov. 12, 2015) (citing *Aikens v. Ingram*, 652 F.3d 496, 501 (4th Cir. 2011)). A party must then establish at least one of the six grounds for relief provided for in Rule 60(b): (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or misconduct by an opposing party; (4) a void judgment; (5) satisfaction, release, or discharge of a judgment; or (6) any other reason that justifies relief. Fed.R.Civ.P. 60(b)(1)–(6). "A party seeking relief under Rule 60(b)(6) must demonstrate 'extraordinary circumstances.'" *Mizrach*, 2015 WL 7012658, at *4 (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 536 (2005)). "The disposition of motions made under . . . Rule 60(b) is a matter which lies largely within the discretion of the trial judge and his

14

action is not lightly to be disturbed by an appellate court." *Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*, 383 F.2d 249, 251 (4th Cir. 1967) (citations omitted).

2. Plaintiffs' Motion for Relief

In its August 1, 2018 order, this Court granted Defendant Kyle Shuman's motion to dismiss due to insufficient service of process. ECF No. 55. The Court noted that service was insufficient under Federal Rule of Civil Procedure 4(e)[5] because Plaintiffs' process server attempted to serve Mr. Shuman at his place of employment, BCDC, by handing the Summons and Complaint to Yolanda Rawlers, Administrator of BCDC, and held that Plaintiffs failed to demonstrate good cause for delay in service under Rule 4(m). *Id.* at 3–5. Plaintiffs now seek relief from that order pursuant to Federal Rule of Civil Procedure 60(b), arguing that delay in serving Mr. Shuman constitutes excusable neglect under Rule 60(b)(1) and that dismissal of Mr. Shuman results in manifest injustice to Plaintiffs, warranting relief under Rule 60(b)(6). ECF No. 85.

Ordinarily, the Court would first analyze whether Plaintiffs met the threshold requirements to bring a Rule 60(b) motion. However, because the Court finds that Plaintiffs have failed to establish excusable neglect pursuant to Rule 60(b)(1) and extraordinary circumstances justifying relief pursuant to Rule 60(b)(6) for the reasons stated below, such analysis is unnecessary.

a. Rule 60(b)(1) – Excusable Neglect

Rule 60(b)(1) permits a court to "relieve a party . . . from a final judgment, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect." Fed.R.Civ.P. 60(b)(1). In *Pioneer Investment Services Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380 (1993),

---

[5] Rule 4(e) sets forth the procedure for serving an individual within a judicial district of the United States and provides in relevant part: "[A]n individual . . . may be served in a judicial district of the United States by . . . delivering a copy of the summons and of the complaint to the individual personally." Fed.R.Civ.P. 4(e)(2)(A).

15

"[t]he Supreme Court articulated the standard for 'excusable neglect,'" and identified four factors to consider: "(1) the danger of prejudice to the non-movant, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith." *Marshall v. Marshall's TJX Cos., Inc.*, No. WMN-15-555, 2016 WL 1366025, at *1 (D.Md. Apr. 6, 2016) (quoting *Pioneer Inv. Servs. Co.*, 507 U.S. at 395). This Court has determined that the most important factor is the reason for the delay. *Id.*; *Rothenberg v. Marriott Intern., Inc.*, No. CCB-08-173, 2008 WL 687033, at *1 (D.Md. Feb. 29, 2008).

The first and most important factor for the Court to consider is the reason for the delay. On this point, Plaintiffs argue that their reason for delay in serving Mr. Shuman was "because [Mr. Shuman] did not reveal the defect until after the 4(m) time period had expired." ECF No. 85-1 at 11. In the August 1, 2018 order, this Court rejected that argument, noting that Mr. Shuman "did not 'reveal' anything" but "merely pointed out what had already been true throughout the ninety-day period: serving Rawlers at BCDC [wa]s insufficient under Rule 4(e) when suing . . . Shuman as [an] individual[ ]. ECF No. 55 at 3. Rather, the Court held that "the delay in service . . . [wa]s not outside the [Plaintiffs'] control" and that Plaintiffs' "mistaken belief [wa]s insufficient to demonstrate good cause." *Id.* (citations and internal quotation marks omitted).

Notably, Plaintiffs do not contest that service upon Mr. Shuman in December 2016 was insufficient per Federal Rule of Civil Procedure 4(e). Thus, as the Court clearly stated in its August 1, 2018 order, the sole reason for the delay was Plaintiffs' mistake. *Id.* The United States Court of Appeals for Fourth Circuit and this Court have repeatedly held that a plaintiff's mistaken belief that service was made properly "is insufficient to establish good cause." *Hansan v. Fairfax Cty. Sch. Bd.*, 405 F.App'x 793, 794 (4th Cir. 2010); *Shilling v. Thomas*, No. PWG-16-2696, 2017 WL

16

1035854, at *5 (D.Md. Mar. 16, 2017); *Chen v. Mayor & City Council of Balt.*, 292 F.R.D. 288, 293–94 (D.Md. 2013); *Tann v. Fisher*, 276 F.R.D. 190, 193 (D.Md. 2011).[6] Plaintiffs attempt to shift blame for the mistake to the process server, ECF No. 85-1 at 12, but fail to recognize that the process server's actions were within their reasonable control. As the delay can only be attributed to Plaintiffs' mistake and the mistake was well within Plaintiffs' reasonable control, this factor weighs against finding excusable neglect.

Plaintiffs maintain similar arguments for the fourth factor, good faith. They again contend that they "did not have actual knowledge of the mistake in service until it was revealed . . . in late September 2017." *Id.* at 16. However, as discussed, this Court previously rejected that argument. ECF No. 55 at 3. It is evident from the circumstances that Plaintiffs did not act with good faith in attempting to serve Mr. Shuman. They overlooked entirely the requirements for serving individuals pursuant to Rule 4(e) and instead attempted to serve Mr. Shuman at his place of employment by handing the summons and complaint to Ms. Rawlers, despite controlling case law warning that such service is insufficient. *See, e.g., Little v. E. Dist. Police Station*, No. WDQ-13-1514, 2014 WL 271628, at *3 (D.Md. Jan. 22, 2014) (concluding that the plaintiff did not satisfy Rule 4(e) when he sued police officers in their individual capacities but attempted to serve them at their place of business, their police department headquarters);[7] *Tann*, 276 F.R.D. at 192

---

[6] In its Motion, Plaintiffs attempt to factually distinguish *Shilling* and *Chen*. ECF No. 85-1 at 12–13. While it is true that the facts in both cases differ from the facts in the instant case, the legal premise remains the same: Mistaken belief of proper service is insufficient to establish good cause.

[7] Plaintiffs also attempt to distinguish *Little*. ECF No. 85-1 at 13. While acknowledging that *Little* "stands for the proposition that service upon an unauthorized agent at the defendant's workplace is insufficient," Plaintiffs state that the Court "ultimately found good cause for plaintiff's mistake and gave plaintiff an additional chance to complete service." *Id.* However, this reading of *Little* is incorrect. After finding that the plaintiff had not properly served the defendants, the Court "order[ed] the [p]laintiff to show good cause within 14 days why the complaint should not be dismissed without prejudice under Rule 4(m)." *Little*, 2014 WL 271628, at *3.

("Further, service to an individual who has not been authorized to receive service of process at a defendant's place of business does not constitute 'delivering a copy of each to an agent authorized by appointment or by law to receive service of process' because 'an agent . . . must be one who is authorized either by appointment or by law to receive service.'" (internal citations and quotation marks omitted)). In light of their actions, Plaintiffs' attempt to couch their failure to comply with the rule as a mistaken belief is unpersuasive. As such, the fourth factor weighs against finding excusable neglect.

As to the remaining factors, danger of prejudice to the non-movant and length of delay, Plaintiffs contend that they would "suffer the ultimate prejudice" because the statute of limitations on the claims against Mr. Shuman have run, that the length of delay was reasonable, and that the delay has had no negative impact on the Court's proceedings. ECF No. 85-1 at 10–11. Plaintiffs do not address the possible prejudice to Mr. Shuman, the non-movant. *See id.* Even if Mr. Shuman would not be prejudiced, the length of delay was reasonable, and court proceedings were not impacted, the circumstances clearly weigh against a finding of excusable neglect on the other two factors, including the most important factor. As stated, it is evident that Plaintiffs overlooked the proper procedure for serving individuals as set forth in Rule 4(e), and it is well established that "[a] party that fails to act with diligence will be unable to establish that his conduct constituted excusable neglect pursuant to Rule 60(b)(1)." *Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 413 (4th Cir. 2010) (citations omitted). Accordingly, Plaintiffs' request for relief pursuant to Rule 60(b)(1) is DENIED.

b. Rule 60(b)(6) – Extraordinary Circumstances

Rule 60(b)(6) permits a court to "relieve a party . . . from a final judgment, order, or proceeding for . . . any other reason that justifies relief." Fed.R.Civ.P. 60(b)(6). "Relief under

Rule 60(b)(6) may only be granted under extraordinary circumstances where, without such relief, an extreme and unexpected hardship would occur." *Trs. of Painters' Tr. Fund of Washington, D.C., and Vicinity v. Clabbers*, No. DKC-02-4063, 2010 WL 2732241, at *5 (D.Md. July 9, 2010) (quoting *Sawka v. Healtheast, Inc.*, 989 F.2d 138, 140 (3d Cir. 1993)) (internal quotation marks omitted). Without relief, Plaintiffs "will be precluded from a fair chance at justice for the death of their daughter," ECF No. 85-1 at 17–18, but this is neither an extreme, nor unexpected hardship justifying vacatur of the Court's prior order. Rather, it is the ordinary consequence of Plaintiffs' failure to properly serve Mr. Shuman pursuant to Rule 4(e) within the ninety-day time frame provided by Rule 4(m). For this reason, Plaintiffs' request for relief pursuant to Rule 60(b)(6) is DENIED.

## CONCLUSION

In conclusion, for the reasons stated herein, CCS's Motion to Dismiss (ECF No. 75) is GRANTED as to Counts I and II, and Plaintiffs' Motion for Relief (ECF No. 85) is DENIED. A separate order will follow.

Date: 9 April 2019

A. David Copperthite
United States Magistrate Judge

19