IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| EDWARD GELIN, *at al.*, | * |
| Plaintiffs, | * |
| vs. | *   Civil Action No.   ADC-16-3694 |
| BALTIMORE COUNTY, MARYLAND, MARYLAND, *et al.*, | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

The Court will address two interrelated but separately briefed motions in this Memorandum Opinion. On remand from the United States Court of Appeals for the Fourth Circuit, Plaintiffs Deborah and Edward Gelin move this Court for an extension of time to serve process on Defendants Kyle Shuman, Roselor Saint Fleur, Diane Bahr, Victoria Titus, and Jennifer Sevier (the "CCS Employees"). ECF No. 126-1. These individuals were, at the time of Ms. Ashleigh Gelin's death, employed by Correct Care Solutions, which contracted with Baltimore County to provide onsite medical services at the Baltimore County Detention Center. *Id.* at 5-6.[1] The CCS Employee Defendants oppose the Motion and move this Court to dismiss the claims against them for insufficient service of process. ECF Nos 127, 131. After considering both Motions and the responses thereto, the Court finds that no hearing is necessary. Loc.R. 105.6 (D.Md. 2021). For the reasons stated herein, the Court will DENY Plaintiffs' Motion for Extension of Time to Serve Process (ECF No. 126) and GRANT the CCS Employees' Motion to Dismiss (ECF No. 127).

---

[1] In this Opinion, citations to the specific pages in the record correspond to pagination assigned by CM/ECF.

1

## FACTUAL BACKGROUND

This case arises out of the in-custody death of Ms. Ashleigh Gelin at the Baltimore County Detention Center ("BCDC"). ECF No. 12 at ¶¶ 1,4. Ms. Gelin was admitted to BCDC on November 4, 2013. *Id.* at ¶ 30. During intake, and the days that followed, she was seen by numerous health care providers employed by Correct Care Solutions ("CCS"). *Id.* at ¶¶ 30-51. At the time, CCS was responsible for providing health care services to inmates incarcerated at BCDC. *Id.* at ¶10. During Ms. Gelin's medical screens, CCS Employees noted that she had a history of mental illness (including bipolar disorder, depression, and psychosis) and was suffering from benzodiazepine and opiate withdrawal. *Id.* at ¶¶ 31-35. Despite this information, Ms. Gelin was not timely seen by a mental health professional or placed on "special observation status," nor was she given the medications necessary to treat her mental illnesses. *Id.* at ¶¶ 40, 44-45.

Nearly seven days after she was admitted, Ms. Gelin was seen for the first time by a mental health professional, Mr. Kyle Shuman, who concluded that she "had a history of anxiety, borderline personality disorder, panic attacks and substance abuse issues." *Id.* at ¶¶ 42, 47. Ms. Gelin was not, however, referred for mental health services. *Id.* at 48. Three days later, on November 14, 2013, Ms. Gelin reported to Mr. Shuman that she "was hearing voices" and complained that she was not receiving psychotropic medications. *Id.* at ¶ 51. Mr. Shuman noted that he would follow up with Ms. Gelin the following morning. *Id.* However, later the same day, Ms. Gelin took her own life. *Id.* at ¶¶ 55, 58.

## PROCEDURAL BACKGROUND

*The Lawsuit, Original Complaint, and Amended Complaint*

On November 11, 2016, Ms. Gelin's parents, Plaintiffs Edward and Deborah Gelin ("Plaintiffs" or "the Gelins"), filed suit on behalf of themselves and as personal representatives of

2

Ms. Gelin against Baltimore County, Maryland, Baltimore County Sheriff Jay R. Fisher, and BCDC employees Kyle Shuman, Roselor Saint Fleur, Victoria Titus, Jennifer Sevier, Diane Bahr, Michael Salisbury II, Michelle Rawlins, Nicholas Quisguard, Myesha White, Joseph Lux, Gregory Lightner, Carl Luckett, and John and Jane Does 1 to 10. ECF No. 1. The Gelins alleged the following counts: violations of Ms. Gelin's constitutional rights under 42 U.S.C. § 1982 against all individually named Defendants (Count I-III); violations of Ms. Gelin's constitutional rights under § 1983 against Baltimore County and Sheriff Fisher (Count IV); violations of the Maryland Declaration of Rights against all individually named Defendants (Counts V-VI); Negligence, Gross Negligence, and Wrongful Death against all individually named Defendants (Counts VII-IX); and Negligent Hiring, Retention, and/or Supervision against Baltimore County, Sheriff Fisher, and Doe Defendants 1 to 10 (Count X). *Id.* at ¶¶ 87-182.

Plaintiffs filed an Amended Complaint on February 8, 2017. ECF No. 12. The amended filing added CCS as a Defendant and recognized that Defendants Shuman, Saint Fleur, Titus, Sevier, and Bahr were employees of CCS.[2] *Id.* at ¶¶ 10-17. Plaintiffs also replaced Sherriff Fisher, who Plaintiffs originally asserted "supervised or administered BCDC," with BCDC's Director, Ms. Deborah Richardson. ECF Nos. 1, ¶ 80; 12, ¶ 7. The Amended Complaint maintained the same ten causes of action as the initial Complaint but amended Count X to include CCS. ECF No. 12 at ¶¶ 180-85.

*Service of Process On the CCS Employees & The Motions to Dismiss*

Plaintiffs were issued various Summonses for Defendants on November 15, 2016—four days after the original Complaint was filed. ECF No. 3. Through a private process server, they

---

[2] The Amended Complaint also reiterated claims against members of the BCDC staff. ECF No. 12. This Opinion refers to these BCDC Employees collectively as "the County Defendants."

3

attempted to serve the CCS Employees in December 2016 by hand-delivering copies of the Summons and Complaint to Yolanda Rawlers, Administrator of BCDC. ECF No. 55 at 1. While Ms. Rawlers accepted the summonses for Defendants Shuman and Saint Fleur, Plaintiffs were informed that Defendants Bahr, Sevier, and Titus were no longer assigned to the BCDC facility. *Id.* Although Plaintiffs subsequently ran a search for Bahr, Sevier, and Titus' addresses, they were not able to locate or serve these Defendants in the succeeding eleven months. *Id.*

CCS filed a Motion to Dismiss or, in the Alternative, for Summary Judgment on March 7, 2017. ECF No. 17. After the Motion was fully briefed, on September 5, 2017, this Court dismissed the lone claim against CCS after finding that Plaintiffs' Amended Complaint failed to sufficiently state a claim for Negligent Hiring, Retention, and/or Supervision. ECF No. 24, 25.

Prior to an October 2017 teleconference, the individual CCS Employees informed Plaintiffs that they had not been properly served. ECF No. 55 at 1. Plaintiffs subsequently filed a Consent Motion for Extension of Time to Serve Process. ECF No. 30. Because they had "experienced difficulty" in locating and serving Defendants Titus, Sevier, and Bahr, Plaintiffs requested an additional 30 days to effectuate service. *Id.* at 2. Although they argued that Defendants Shuman and Saint Fleur were properly served at BCDC, Plaintiffs also, "in an abundance of caution," requested an additional 30 days to re-serve these Defendants. *Id.* The Court granted the motion on October 10, 2017 and the clerk reissued Summonses on October 25, 2017. ECF Nos. 31, 32-37. Thereafter, a process server was able to serve Defendants Shuman and Titus on October 28, 2017; Defendant Bahr on November 6; and Defendant Saint Fleur on November 20. ECF No. 55 at 2. The process server was not, however, able to serve Defendant Sevier. *Id.*

In November 2017, the same attorneys who litigated on behalf of CCS entered their appearances for the CCS Employees and filed Motions to Dismiss for insufficient service under

4

Federal Rule of Civil Procedure 12(b)(5). ECF Nos. 40-41, 42, 46-47, 48. The CCS Employees argued that dismissal was required as Plaintiffs could not show good cause for their failure to serve process within the 90-day period provided in Federal Rule of Civil Procedure 4(m). ECF Nos. 42, 48. On August 1, 2018, this Court vacated its prior Order reissuing Summonses and granted ECF Nos. 42 and 48, the CCS Employees' Motions to Dismiss. ECF No. 55. The Court agreed that Plaintiffs had not shown good cause for their failure to timely serve. *Id.* Applying case law from this District and the United States Court of Appeals for the Fourth Circuit, it reasoned that dismissal was compelled as "courts do not have discretion to extend the Rule 4(m) deadline absent good cause." *Id.* at 4.[3]

*The Motion for Excusable Neglect*

On March 27, 2019, more than seven months later, Plaintiffs filed a Motion for Relief from the Court's August 1, 2018 Order dismissing the CCS Employees for insufficient service. ECF No. 85. They argued that Defendant Shuman's dismissal would create a manifest injustice and that their insufficient service constituted excusable neglect. ECF No. 85 at 5-6. The Court denied the Motion on April 9, 2019, finding that the weight of the applicable factors did not support Plaintiffs' excusable neglect argument. ECF No. 86 at 16-19. It explained that Plaintiffs' "overlooked entirely the requirements for serving individuals pursuant to Rule 4(e)" and that the "sole reason for the delay was Plaintiffs' mistake." *Id.* at 16-17. Having their claims dismissed was also not, the Court reasoned, an extraordinary circumstance but rather an "ordinary consequence of Plaintiffs' failure to properly serve Mr. Shuman . . . within the ninety-day time frame[.]" *Id.* at 19.

---

[3] On September 10, 2018, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United State District Court for the District of Maryland and upon consent of all parties, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings. ECF No. 60.

5

*Motion for Entry of Judgment and Subsequent Appeal*

Plaintiffs filed a Motion for Entry of Final Judgment on March 8, 2021.[4] ECF No. 107. The Motion was granted on April 6, 2021 after this Court found, among other things, that the claims against the CCS Employees were separable from the others remaining to be adjudicated and that a final definitive ruling as to these Defendants would help avoid unnecessary delay. ECF No. 109. On April 12, 2021, Plaintiffs filed a notice of appeal challenging this Court's Order dismissing the CCS Employees and denying their Motion for Relief as to Defendant Shuman. ECF No. 110.

The United States Court of Appeals for the Fourth Circuit affirmed in part and vacated in part this Court's August 1, 2018 Order dismissing the CCS Employees. ECF No. 117; *Gelin v. Shuman*, 35 F.4th 212 (4th Cir. 2022). Citing Plaintiffs' lack of action, the Court of Appeals affirmed this Court's ruling that Plaintiffs had "failed to establish 'good cause' within the meaning of Rule 4(m)." ECF No. 117 at 11. The Fourth Circuit did, however, vacate this Court's Order insomuch as it *required* that Plaintiffs show good cause as a prerequisite to obtaining an extension of time to serve process. *Id.* at 11-14. It explained that "under Rule 4(m), while a district court *must* extend the time for service when a plaintiff shows good cause, such a showing is not *necessary* for the court to grant an extension *in its discretion.*" *Id.* at 12 (emphasis in original). The case was remanded back to this Court "to consider in the first instance the parties' arguments as to whether the court should exercise its discretion to extend the time for serving those defendants in the circumstances of this case, even though good cause was not shown." *Id.* at 14.

---

[4] Plaintiffs had previously filed an identical Motion on January 29, 2020, ECF No. 97, which the Court granted on January 31, 2020, ECF No. 99. Plaintiffs' first appeal was, however, ultimately dismissed by the Court of Appeals because this Court's original Rule 54(b) certification was deficient. ECF No. 104.

6

*The Pending Motions*

Plaintiffs filed the instant Motion for Extension of Time to Serve the CCS Employees on August 15, 2022. ECF No. 126. They argue, among other things, that this Court should exercise its discretion to extend the service of process deadline as they attempted to serve the CCS Employees within the Rule 4(m) deadline and the CCS Employees have not asserted that they were prejudiced by the delay. *Id.* at 15-17. Defendants filed an opposition on October 14, 2022, ECF No. 131, and Plaintiff's replied on November 4, 2022, ECF No. 138. On the same day that Plaintiffs filed their Motion, the CCS Employees filed a Motion to Dismiss Renewed wherein they argued that Plaintiffs had not proffered a "reasoned basis to excuse the untimely service." ECF No. 127 at 3. Plaintiffs responded on October 14, 2022, ECF No. 132, and Defendants replied on November 4, 2022, ECF No. 137.

### DISCUSSION

Service of process requires that a defendant be served with a proper summons and a copy of the complaint. Fed.R.Civ.P. 4(c)(1). Unless waived, individuals must be served by (1) "following state law for serving a summons"; (2) handing a copy "to the individual personally"; (3) "leaving a copy . . . at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there"; or (4) "delivering a copy . . . to an agent authorized by appointment or by law to receive service of process." Fed.R.Civ.P. 4(e). Federal Rule of Civil Procedure 4(m) provides that service of process must be effectuated within 90 days of a complaint being filed. If service is not made within this timeframe, the Rule instructs that:

> [T]he court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service to an appropriate period.

Fed.R.Civ.P. 4(m).

For the better part of the last three decades, it has been an open question in this Circuit whether a court has discretion to grant an extension of time to serve a defendant under Rule 4(m) absent a showing of good cause. In *Mendez v. Elliott*, 45 F.3d 75, 78 (4th Cir. 1995), the United States Court of Appeals for the Fourth Circuit held that a complaint "must be dismissed absent a showing of good cause." The following year, however, the Supreme Court of the United States explained that under the 1993 amendments to the Rules, "courts have been accorded discretion to enlarge the [service of process] period '*even if there is no good cause shown.*'" *Henderson v. United States*, 517 U.S. 654, 662-63 (1996) (emphasis added) (citing Advisory Committee's Notes on Fed.R.Civ.P. 4, 28 U.S.C. App., p. 654). In the aftermath of the *Henderson* ruling, numerous Courts in this Circuit reasoned that "the continued vitality of *Mendez* is seriously in doubt." *Melton v. Tyco Valves & Controls, Inc.*, 211 F.R.D. 288, 289-90 (D.Md. 2002); *see also Robinson v. G D C, Inc.*, 193 F.Supp.3d 577, 584 (E.D.Va 2016) ("Rule 4(m) must be understood as permitting district courts to extend the time to serve process even absent a showing of good cause."); *Richardson v. Roberts*, 355 F.Supp.3d 367, 371 (E.D.NC 2019) ("Rule 4(m) vests in the court the power to extend time on its own, even where the plaintiff cannot show good cause.").

The Fourth Circuit addressed this discrepancy in Plaintiffs' appeal. *See Gelin v. Shuman*, 35 F.4th 212 (4th Cir. 2022). The Court reasoned that Rule 4(m)'s first sentence provides courts with two options if a defendant is not served within 90 days: (1) "dismiss the action without prejudice against that defendant" or (2) "order that service be made within a specified time." *Id.* at 219 (quoting Fed.R.Civ.P. 4(m)). Therefore, it follows that "even without a showing of good cause, a court *may* 'order that service be made within a specified time' rather than dismissing the action and that the choice between the two is left to the district court's discretion." *Id.* (emphasis in original) (citing Fed.R.Civ.P. 4(m)). Considering Rule 4(m) in its entirety, the Court concluded

8

that "while a district court *must* extend the time for service when a plaintiff shows good cause, such a showing is not *necessary* for the court to grant an extension *in its discretion*." *Id.*

In the instant case, both this Court and the Fourth Circuit have concluded that Plaintiffs have failed to show good cause for their failure to serve the CCS Employee Defendants. ECF Nos. 55, 117. The question before this Court is therefore limited to whether it should exercise its discretion under Rule 4(m) to grant an extension even though good cause has not been shown. This inquiry necessarily requires that the Court balance its "strong preference that . . . claims and defenses be disposed of on their merits," *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010), with the need to "give some import to the rule," *Hoffman v. Balt. Police Dep't*, 379 F.Supp.2d 778, 786 (D.Md. 2005).

Courts in this District have previously held that a discretionary extension is appropriate when there is "some reasoned basis to exercise [] discretion and excuse untimely service." *Id.*; *CX Reinsurance Co. Ltd. v. Johnson*, No. GJH-18-2355, 2022 WL 541122, at *6 (D.Md. Feb. 23, 2023) (same). Although the Court acknowledges that this standard pre-dates the Fourth Circuit's Opinion in *Gelin*, the *Gelin* Court did not offer a test or standard for determining whether a discretionary extension is appropriate and this Court sees no reason to deviate from the established "reasoned basis" inquiry. This standard also aligns with the Fourth Circuits pronouncement that "the rules [of service] are there to be followed, and plain requirements for the means of effective service of process may not be ignored." *Armco, Inc. v. Penrod-Slauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984).

In determining whether a "reasoned basis" exists, Courts have looked to the length of the delay in service, whether the plaintiff attempted to serve process within the Rule 4(m) timeframe, and whether the defendant would be prejudiced should the service deadline be extended. *See*

9

*United States ex rel. Maharaj v. Estate of Charles Howard Zimmerman*, 427 F.Supp.3d 625, 654 (D.Md. 2019) (reasoned basis to extend deadline where plaintiff missed the deadline by one day in part due to a delay caused by the clerk's office); *United States ex rel. Moore v. Cardinal Fin. Co., L.P.*, CCB-12-1824, 2017 WL 1165952, at *8 (D.Md. March 27, 2017) ("[N]o such 'reasoned basis' to exercise any discretion the court may have, because [the plaintiff] offers no explanation for his failure."); *Lehner v. CVS Pharmacy*, No. RTW-08-1170, 2010 WL 610755, at *3 (D.Md. Feb. 17, 2010) (No reasoned basis where the plaintiff "made no effort to serve [d]efendant within the time allotted under Fed.R.Civ.P. 4(m), failed to take advantage of the first 14 day extension, and instead waited another 13 months to file a second motion to extend time"); *Hoffman*, 379 F.Supp.2d at 786 (No reasoned basis where the plaintiff's counsel "did absolutely nothing to attempt to serve the[] defendants for 118 days, and offers the unavailability of one of his office staff on the final two days as the reason for untimely service").

Plaintiffs point to this Court's decision in *Whetstone v. Mayor & City Counsel of Baltimore*, No. ELH-18-738, 2019 WL 1200555 (D.Md. March 13, 2019). There, the plaintiff was not able to serve the defendant police officers until between 63 and 130 days after the Rule 4(m) deadline expired. *Id.* at 7. In finding that a reasoned basis existed to extend the service deadline, the Court explained that the plaintiff had made numerous attempts to serve the officers and that "the Police Officers do not assert that they are prejudiced by the delay in service." *Id.* at 8. The Court also reasoned that dismissal "would likely bar [the plaintiff] from refiling her suit" due to the applicable statute of limitations. *Id.* Plaintiffs' also attempt to analogize this case to *Escalante v. Tobar Constr., Inc.*, No. 18-cv-00980-PX, 2019 WL 109369 (D.Md. Jan. 3, 2019). There, however, the Court granted an extension of time to serve process after finding that the plaintiffs had shown excusable neglect. *Id.* at *5. Here, the Court has already found that Plaintiffs cannot show that their

10

failure to serve is the result of excusable neglect. ECF No. 86.

Given this matter's extensive procedural history, it is important to clarify the timeline for service of process for the CCS Employees. Plaintiffs filed their original Complaint on November 11, 2016. ECF No. 1. Under Rule 4(m), Plaintiffs had to effectuate service of process within 90 days thereof—by February 9, 2017. During this period, Plaintiffs made the weak effort to serve the CCS Employees at BCDC by handing copies of the summons and complaint to the BCDC Administrator, not the Defendants' employer. The Court was not made aware of Plaintiffs' deficient service attempts until approximately eight (8) months later in October 2017. Shortly thereafter, this Court granted a consent motion to extend the time to serve process on the CCS Employees. ECF No. 31. After the clerk reissued summonses, all but one of the CCS Employees were served with process between October 28 and November 20, 2017, eight to nine months after the original deadline. ECF No. 55. However, on August 1, 2018, this Court vacated its prior Order and dismissed the CCS Employees after finding that Plaintiffs did not show good cause for their failure to timely serve process resulting in no effective service of process on the CCS Employee Defendants. ECF No. 55. Plaintiffs initially filed a notice of appeal with the United States Court of Appeals for the Fourth Circuit on February 2, 2020. ECF No. 100. After their first appeal was dismissed in January 2021 due to a procedural deficiency, Plaintiffs filed a second notice of appeal on April 12, 2021. ECF. No. 110. On May 24, 2022, the Fourth Circuit affirmed in part in vacated in part this Court's August 2018 Order dismissing the CCS Employees. ECF No. 117.

Here, the Court first recognizes that Plaintiffs took negligible steps to effectuate service on the CCS Employees prior to the service deadline. ECF No. 126-1 at 15. They assert that, in December 2016, they attempted to effectuate service of process by leaving the documents with the Administrator of BCDC. *Id.* They do not, however, explain how service on the BCDC

Administrator could comply with the strictures of Rule 4(e), as there is no evidence that the Administrator was authorized, by appointment or law, to accept service of process on the Employees' behalf. *See Gelin*, 35 F.4th at 218 (Recognizing that Plaintiffs "provide no basis to justify why they believed that service on the Administrator would constitute effective service[.]"). By their own admission, Plaintiffs learned that Defendants Titus, Bahr, and Sevier were no longer assigned to BCDC in December 2016—more than two months before the Rule 4(m) deadline. ECF No. 126-1 at 15. Beyond conducting a search for Defendant Titus, Bahr, and Sevier's addresses, Plaintiffs did not make any additional service attempts, nor did they file a motion to extend the service deadline, until October 2017, eight months after the deadline. ECF No. 30. And, although they were still assigned to BCDC, Plaintiffs knew that Defendants Shuman and Saint Fleur were employed by CCS during the original Rule 4(m) period. The Court is able to make this determination as Plaintiffs filed their Amended Compliant, which named CCS and recognized that the medical providers in the facility were employed by CCS, a day before the Rule 4(m) deadline expired. *See* ECF No. 12.

Plaintiffs' delay in serving the CCS Employees or requesting an extension of the Rule 4(m) deadline also far exceeds the time periods in any of the above cited cases. Despite Rule 4(m)'s 90-day time limitation, Plaintiffs did not move this Court to extend the service of process deadline until 239 days, or approximately 8 months, after the original deadline lapsed. As a result, valid service of process was not effectuated on any of the CCS Employees until between 261 and 284 days after the original deadline. Despite this prolonged delay, serving these Defendants did not ultimately prove unfeasible as Plaintiffs were able to effectuate service of process on all but one CCS Employee within 60 days of this Court granting their original extension. ECF Nos. 39, 44.

The CCS Employees argue, and I agree, that the delay in serving process—and the delay

that has ensued to litigate the service issues—is prejudicial. ECF No. 127 at 16-17. All of the following responsive documents were filed in the 11 months between Plaintiffs filing their Complaint and informing the Court that the CCS Employees had not been properly served: Answer to Complaint (ECF No. 8); Motion to Dismiss, or in the Alternative, for Summary Judgement by Sheriff Fisher (ECF No. 9); Motion to Dismiss by the John and Jane Doe Defendants and Deborah Richardson (ECF No. 16); Motion to Dismiss or, in the Alternative, for Summary Judgement by CCS (ECF No. 17); and an Answer by the County Defendants (ECF No. 23). Further, since the CCS Employees were dismissed from this case, ongoing discovery—between appellate stays—was conducted by the other remaining parties. *See* ECF Nos. 89, 95, 106. Plaintiffs attach to their motion an expert witness report demonstrating that the remaining parties have retained experts who have submitted reports. ECF No. 126-2; *compare with LHF Prods., Inc. v. Does*, No. 3:16-cv-284, 2016 WL 7423094, at *6 (E.D.Va. Dec. 22, 2016) ("Because this case remains in an early stage of litigation, in which no defendant has filed an answer or other responsive pleading, the Court sees no prejudice that could result from a brief extension of time in order to serve one defendant."). In this case, clearly life and litigation has gone on without the unserved Defendants. It is conceivable that in a case where there had been little or insignificant litigation whilst the parties litigated the service of process issue, the resulting analysis could have been different. This is not that case. Here, the unserved Defendants have been clearly prejudiced – left behind in the litigation.

In their Motion, Plaintiffs, citing *Brooks v. Johnson*, 924 F.3d 104 (4th Cir. 2019), argue that any potential prejudice is negated as the CCS Employees had notice of the action given that they are represented by the same attorneys as CCS. I find *Brooks* is distinguishable for several reasons. There, a *pro se* plaintiff proceeding *in forma pauperis* "made multiple attempts during the

13

. . . service window to advise the Marshals and the district court of [the defendant's] service information[.]" *Id.* at 121. The Fourth Circuit held that these attempts at effectuating service constituted "good cause" and that any prejudice was minimal because the defendant was "represented by the same attorneys as her co-defendants" and therefore "presumably was fully aware of the case as it proceeded." *Id.* Here, by contrast, Plaintiffs have been represented by counsel throughout the pendency of this litigation and both this Court and the Fourth Circuit have found that Plaintiffs have not established good cause for their failure to timely serve the CCS Employees. Although the CCS Employees are represented by the same counsel as their employer, I find that this relationship is not sufficient to mitigate the prejudice that the CCS Employees have suffered due to Plaintiffs' lack of compliance with Rule 4's service requirements. *See Dring v. Faust*, No. WDQ-12-2344, 2013 WL 657638, at *2 (D.Md. Feb. 21, 2013) ("When a defendant has actual notice of an action, 'the rules . . . are entitled to a liberal constriction . . . . But the rules are there to be followed, and plain requirements for the means of effectuating service of process may not be ignored.'" (citation omitted)).

Finally, Plaintiffs argue that they themselves would be prejudiced by dismissal of the claims against the CCS employees as the statute of limitations has expired.[5] ECF No. 126 at 16. Plaintiffs are correct that, when contemplating a discretionary extension, Courts in this District have considered whether the applicable statute of limitations would bar refiling the claims. *See Whetstone*, 2019 WL 1200555, at *8; *Escalante v. Tobar Constr., Inc.*, No. 18-cv-00980-PX, 2019 WL 109369, at *5 (D.Md. Jan. 3, 2019). While Courts have considered the impact of an expired

---

[5] "There is no federal statute of limitations for § 1983 claims, the state limitations period which governs personal injury actions is applied[.]" *Lewis v. Richmond City Police Dep't*, 947 F.2d 733, 735 (4th Cir. 1991). Here, the Court notes that Plaintiffs filed their original Complaint just three days before the expiration of the three-year statute of limitations period. *See* Md. Code Ann., Cts. & Jud. Proc., § 5-101.

14

statute of limitations, this consideration generally does not, standing alone, provide a reasoned basis to extend the service of process deadline. Such a rule would render the time limitation in Rule 4(m) voluntary when the statute of limitations is implicated. *See Lehner*, 2010 WL 610755, at *3 ("[T]his Court will not make a mockery of the time requirements set forth in the Federal Rules of Civil Procedure."). In *Whetstone* and *Escalante*, the Court considered, in addition to any statute of limitations concerns, the length of the delay in service and the prejudice the defendants would suffer should the deadline be extended. *Whetstone*, 2019 WL 1200555, at *8; *Escalante*, 2019 WL 109368, at *5. These cases are, indeed, distinguishable from the instant case because both Courts found that the service of process delays were relatively short and would not prejudice the defendants. *Id.* As discussed above, here, the delay in service was significant and the CCS employees would suffer what amounts to considerable prejudice should the deadline be extended. Accordingly, I find that the running of the applicable statute of limitations does not, standing alone, supply a reasoned basis to extend the deadline.

It is also important to note that Plaintiffs sued CCS itself in a single count that was dismissed by the Court for lack of pleading sufficient facts. Plaintiffs attempt to compensate for this lost claim by continuing to pursue the individual employees of CCS, possibly with the hope that CCS would indemnify any judgment against its employees. It would appear more likely than not that, if Plaintiffs were to prevail, there would be more of an opportunity for recovery from CCS than the individual defendants. That may or may not be the case. Plaintiffs lost that opportunity however when CCS was dismissed. The mandates of Rule 4(m), the findings of this Court and of the Fourth Circuit preclude shifting the lost opportunity to the CCS employees when Plaintiffs literally did nothing to ensure proper service of process.

Based on the foregoing, the Court finds that there is no reasoned basis to exercise its

discretion to extend the Rule 4(m) service of process deadline. In their Motion, Plaintiffs assert that "the expressed preference in this Circuit is to treat a motion to dismiss in a situation involving defective service as a motion to quash, and to resolve disputes on their merits." ECF No. 126 at 15-16. However, considering together the reasons for and length of the delay, as well as the prejudice to the CCS Employees that stems from it, I find that dismissal of the claims against the CCS Employees is warranted.

### CONCLUSION

For the reasons set forth in this Memorandum Opinion, Plaintiffs' Motion for Extension of Time to Serve Process (ECF No. 126) is DENIED. Defendant Bahr, Saint Fleur, Sevier, Shuman, and Titus's Motion to Dismiss Renewed (ECF No. 127) is GRANTED. A separate Order will follow.

Date: 9 February 2023

A. David Copperthite
United States Magistrate Judge