IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EDWARD GELIN, *et al.*,                           *
                                                 *
                    Plaintiffs,                  *
                                                 *
        vs.                                      *          Civil Action No.   ADC-16-3694
                                                 *
BALTIMORE COUNTY, MARYLAND,                      *
MARYLAND, *et al.*,                              *
                                                 *
                    Defendants.                  *
                                                 *

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Defendants Baltimore County, Maryland, Deborah Richardson, Michael Salisbury, Michelle Rawlings, Nicholas Quisguard, Myesha White, Joseph Lux, Gregory Lightner, and Carl Luckett (collectively "County Defendants") move this Court for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. ECF No. 133.[1] After considering County Defendants' Motion and the responses thereto (ECF Nos. 133, 145, 148), the Court finds that no hearing is necessary. Loc.R. 105.6 (D.Md. 2021). For the reasons stated herein, County Defendants' motion is GRANTED IN PART, DENIED IN PART.

### FACTUAL BACKGROUND

On November 4, 2013, Ms. Ashleigh Gelin began serving a one-year sentence at the Baltimore County Detention Center ("BCDC") for a theft scheme conviction. ECF No. 12 at ¶ 30. During intake, Ms. Gelin was evaluated by several healthcare professionals employed by Correct Care Solutions ("CCS"), a private company retained to provide healthcare services at BCDC. *Id.*

---

[1] On September 10, 2018, this case was referred to United States Magistrate Judge A. David Copperthite for all proceedings in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 (D.Md. 2021). ECF No. 60.

at ¶¶ 30-51. The CCS employees noted that Ms. Gelin suffered from various mental illnesses (including bipolar disorder, depression, anxiety, borderline personality disorder, and psychosis) and was actively battling benzodiazepine and opiate addictions. *Id.* at ¶¶ 31-35, 42, 47. Despite these mental health concerns, Ms. Gelin was not timely seen by a mental health professional or placed on "special observation status" as required by the facilities' regulations. ECF Nos. 1-3 at 82; 12 at ¶ 40. When she was ultimately seen by a CCS mental health employee on November 13, 2013, Ms. Gelin was not referred for any mental health services or treatment. ECF Nos. 1-3 at 91-92; No. 12 at ¶ 48.

As Ms. Gelin's mental illnesses went untreated, her behavior and demeanor at BCDC deteriorated. ECF Nos. 1-3 at 90. On November 5, 2013, her first full day at the facility, an anonymous inmate reported Ms. Gelin for distributing smuggled suboxone to other inmates. *Id.* The very next day, she was again reported for offering suboxone in exchange for commissary items and was "locked in her dorm for [eight] hours . . . for not making her bunk after being told to do so [three] times." *Id.* at 90-91. Ms. Gelin was eventually "placed in solitary confinement, where she was bullied and harassed by prisoners in nearby cells." ECF No. 12 at ¶ 3. While in this housing unit, she was involved in two physical altercations. ECF No. 1-3 at 92. During the second altercation, two inmates struck Ms. Gelin with closed fists in the face. *Id.* at 92. Ms. Gelin received medical attention for her injuries. ECF No. 12 at ¶ 49. Despite these issues, Ms. Gelin was not relocated to another housing unit within BCDC. *Id.* at ¶ 50.

On November 14, 2013, correctional officers requested an additional mental health appointment for Ms. Gelin after observing her "crying, screaming and complaining of hearing voices." ECF No. 1-3 at 27, 93. Later the same afternoon, a CCS employee reevaluated Ms. Gelin who expressed concerns about "her current housing unit" and lack of medication. *Id.* Ms. Gelin's

2

appearance was noted as "disheveled" and her mood "anxious." *Id.* at 27-28. Despite these observations, the CCS employee did not order that Ms. Gelin begin any mental health services or treatment. *Id.* Several hours later, Ms. Gelin took her own life. ECF No. 12 at ¶¶ 55, 58. Although other inmates attempted to summon help by "continuously scream[ing]" and "banging on the cell walls," BCDC staff members did not respond in time to save Ms. Gelin. *Id.* at ¶¶ 58-59.

### PROCEDURAL BACKGROUND

Ms. Gelin's parents, Plaintiffs Edward and Deborah Gelin ("Plaintiffs" or "the Gelins"), filed suit on behalf of themselves and as personal representatives of Ms. Gelin's Estate on November 11, 2016. ECF No. 1. Plaintiffs filed an Amended Complaint against Baltimore County, Correct Care Solutions, Deborah Richardson, Kyle Shuman, Roselor Saint Fleur, Victoria Titus, Jennifer Sevier, Diane Bahr, Michael Salisbury, Michelle Rawlins, Nicholas Quisguard, Myesha White, Joseph Lux, Gregory Lightner, Carl Luckett, and John and Jane Does 1-8 on February 8, 2017. ECF No. 12. They alleged the following counts: violations of Ms. Gelin's constitutional rights under 42 U.S.C. § 1983 against all individually named Defendants (Count I-III); violations of Ms. Gelin's constitutional rights under § 1983 against Baltimore County and Deborah Richardson (Count IV); violations of the Maryland Declaration of Rights against all individually named Defendants (Counts V-VI); negligence, gross negligence, and wrongful death against all individually named Defendants (Counts VII-IX); and negligent hiring, retention and/or supervision against Baltimore County, Deborah Richardson, Correct Care Solutions, and John and Jane Doe 1-8 (Count X). *Id.*

CCS filed a Motion to Dismiss, or in the alternative, for Summary Judgment on March 7, 2017. ECF No. 17. The Court granted this Motion on September 5, 2017, finding that Plaintiffs failed to sufficiently plead several elements of a negligent hiring, retention and/or supervision

claim against CCS. ECF No. 17, 24. Thereafter, following a remand from the United States Court

of Appeals for the Fourth Circuit, the individually named CCS employees, Defendants Shuman,

Saint Fleur, Bahr, Titus, and Sevier, filed a renewed Motion to Dismiss alleging that they had not

been served with process.[2] ECF No. 127. Plaintiffs contemporaneously filed a Motion for

Extension of Time to Effectuate Service of Process. ECF No. 126.  On February 9, 2023, this

Court, finding no reasoned basis to extend the service of process deadline, granted the CCS

Defendants' Motion to Dismiss and denied Plaintiffs' Motion to Extend Time. ECF No. 146. As a

result of these rulings, CCS and the individually named CCS employees have been entirely

dismissed from this action.

On October 18, 2022, County Defendants filed the present Motion for Judgment on the

Pleadings. ECF No. 133. Plaintiffs responded in opposition on January 27, 2023. ECF No. 145.

County Defendants replied on February 10, 2023. ECF Nos. 145, 148.

**DISCUSSION**

**A. Standard of Review**

County Defendants have filed a Motion for Judgment on the Pleadings under Federal Rule

of Civil Procedure 12(c). A party may move for judgment on the pleadings "[a]fter the pleadings

are closed—but early enough not to delay trial." Fed.R.Civ.P. 12(c). Motions for judgment on the

pleadings are subject to the same standards as motions to dismiss under Federal Rule of Civil

Procedure 12(b)(6). *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014) (citing *Butler v. United States*, 702 F.3d 749, 751-52 (4th Cir. 2012)). Accordingly, a district court "evaluating

---

[2] The Court originally granted the CCS Defendants' Motion to Dismiss on August 1, 2018, finding that Plaintiffs could not show good cause for failing to serve process within the deadline set by Federal Rule of Civil Procedure 4(m). ECF No. 55. The United States Court of Appeals for the Fourth Circuit agreed that Plaintiffs could not show good cause but remanded for this Court to determine whether a discretionary extension of the service of process deadline was appropriate. ECF No. 117, 118.

a motion for judgment on the pleadings must assume that the well-pleaded facts alleged in the complaint are true and must draw all reasonable factual inferences in favor of the non-moving party." *Hamilton Jewelry, LLC v. Twin City Fire Ins. Co., Inc.*, 560 F.Supp.3d 956, 961 (D.Md. 2021). When deciding motions under Rule 12(c), courts may also consider documents "attached as an exhibit to a pleading . . . so long as they are integral to the complaint and authentic." *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013). "A Rule 12(c) motion should be granted when the pleadings 'fail to state any cognizable claim for relief, and the matter can, therefore, be decided as a matter of law.'" *Hamilton Jewelry, LLC*, 560 F.Supp.3d at 961 (quoting *Rock for Life-UMBC v. Hrabowski*, 594 F.Supp.2d 598, 605 (D.Md. 2009)).

**B. 42 U.S.C. § 1983 and Maryland Declaration of Rights Claims (Counts I-VI)**

### 1. The Constitutional Difference Between Pre-Trial and Convicted Inmates

County Defendants preliminarily argue that they are entitled to judgment on Counts I-V as Plaintiffs pleaded their claims under the Fourteenth Amendment instead of the Eighth Amendment. ECF No. 133-1 at 12-14. In their view, the Fourteenth Amendment applies only to pretrial detainees and Ms. Gelin was a convicted inmate at the time of the alleged constitutional violations. *Id.* While Plaintiffs do not dispute that these claims should have been brought under the Eighth Amendment, they argue that judgment should not be granted on this ground as the "exact same deliberate indifference standard" applies under both amendments. *Id.*

As County Defendants correctly point out, "Eighth Amendment protections extend to those detainees already found guilty of a criminal offense, whereas similar protections apply to pretrial detainees pursuant to the due process clause of the Fourteenth Amendment." *Seth v. McDonough*, 461 F.Supp.3d 242, 258 (D.Md. 2020). Courts have reasoned that this is because "a pretrial detainee, not yet found guilty of a crime, may not be subjected to punishment of any description."

5

*Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992). Despite this distinction, pretrial detainees "retain at least those constitutional rights . . . [held] by convicted prisoners." *Bell v. Wolfish*, 441 U.S. 520, 545 (1975). Accordingly, "the Fourth Circuit has determined that the Eighth Amendment's deliberate indifference standard . . . also applies to claims of inadequate medical treatment made by pretrial detainees under the Fourteenth Amendment." *Knight v. Watts*, No. ELH-21-56, 2022 WL 80637, at \*9 (D.Md. Jan. 6, 2022).

Here, the pleadings and exhibits attached thereto aptly demonstrate that Ms. Gelin was a convicted inmate at the time of the alleged constitutional violations. *See* ECF Nos. 12 at ¶ 30; 1-3 at 93. Therefore, the Court finds that Plaintiffs erred by pleading their claims under the Fourteenth Amendment. This pleading deficiency is, however, not fatal to Plaintiffs' claims. Such an error is strictly technical and has no practical effect on the applicable analysis as this Court evaluates Fourteenth Amendment and Eighth Amendment claims under the same deliberate indifference standard. *See Eastman v. Balt. City Det. Ctr.*, No. CCB-10-2389, 2011 WL 210343, at \*2 n.3 (D.Md. Jan. 21, 2011) ("As a practical matter, pretrial detainees' rights under the Due Process Clause are coextensive with the Eighth Amendment protections applicable to convicted inmates."). Indeed, the United States Court of Appeals for the Fourth Circuit has reasoned that such a distinction "need not [be] resolve[d] . . . because the standard in either case is the same[.]" *Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001). Due to the non-substantive nature of Plaintiffs' mistake, the Court finds that judgment on the pleadings is not appropriate and will proceed to assess County Defendants arguments related to the deliberate indifference standard.

While the distinction between a pre-trial detainee and a convicted inmate is insignificant to Plaintiffs' federal causes of action, it does influence their claims under the Maryland Declaration of Rights. Plaintiffs bring two Maryland Declaration of Rights Claims: Count V alleges a violation

6

of Article 24 and Count VI alleges a violation of Articles 16 & 25. ECF No. 12 at ¶¶ 136-53.

"Article 24 of the Maryland Declaration of Rights is the state law equivalent of the Fourteenth

Amendment of the United States." *Hawkins v. Leggett*, 955 F.Supp.2d 474, 496 (D.Md. 2013)

(citations omitted). "Therefore, the analysis under Article 24 is, for all intents and purposes,

duplicative of the analysis under the Fourteenth Amendment." *Id.* Here, because the Fourteenth

Amendment does not apply to Ms. Gelin as a convicted inmate, the Court finds that Article 24 of

the Maryland Declaration of Rights is similarly inapplicable. Accordingly, judgment on the

pleadings as to Count V is granted.

On the contrary, Articles 16 & 25 of the Maryland Declaration of Rights are "analogues to

the Eighth Amendment." *Palmont v. Wright*, No. PWG-19-cv-0568, 2020 WL 7043850, at *7

(D.Md. Dec. 1, 2020). As such, "these claims are analyzed under the same standard as the Eighth

Amendment." *Id.*; *see also Torbit v. Balt. City Police Dep't*, 231 Md.App. 573, 590 (2017)

("Maryland courts have historically treated [Articles 16 & 25] as providing the same protection as

the Eighth Amendment to the United States Constitution."). Given that the Eighth Amendment

protects the constitutional rights of convicted inmates—like Ms. Gelin—Plaintiffs properly assert

equivalent state law cruel and unusual punishment claims under Articles 16 & 25. As explained

below, Plaintiffs have pleaded facts sufficient to allege that Ms. Gelin's Eighth Amendment rights

were violated. Therefore, because the same standards apply, the Court finds that judgment on

Count VI is not appropriate at this stage of the litigation.

2. Defendants Salisbury, Rawlings, Quisguard, White, Lux, Lightner, Luckett (the "Correctional Officer Defendants") and the Deliberate Indifference Standard

County Defendants argue that they are entitled to judgment on Counts I, II, III, and VI as

Plaintiffs do not plausibly allege deliberate indifference in violation of the Eighth Amendment.

ECF No. 133-1 at 14. I disagree. It is well established that "the treatment a prisoner receives in

prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). Through its prohibition on "cruel and unusual punishment," the Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hutson v. Palmer*, 468 U.S. 517, 526-27 (1984)). However, "not every injury suffered by a prisoner at the hands of another 'translates into constitutional liability for prison officials responsible for the victim's safety.'" *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 834).

Prisoners alleging Eighth Amendment violations must satisfy the two-prong test set forth in *Farmer v. Brennan*, 511 U.S. 825 (1994). *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017). The first "'objective' prong requires a plaintiff to prove that the alleged violation was 'sufficiently serious.'" *Pfaller v. Amonette*, 55 F.4th 436, 445 (4th Cir. 2022) (quoting *Farmer*, 511 U.S. at 834). To be "sufficiently serious," "the deprivation must be 'extreme'—meaning that is poses 'a serious or significant physical or emotional injury resulting from the challenged conditions,' or 'a substantial risk of such serious harm resulting from . . . exposure to the challenged conditions." *Scinto*, 841 F.3d at 225 (quoting *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (internal quotation marks and citations omitted)).

The second "'subjective' prong requires a plaintiff to show that prison officials acted with 'deliberate indifference.'" *Pfaller*, 55 F.4th at 445 (quoting *Scinto*, 841 F.3d at 225). This requires a showing that "the official kn[ew] of and disregard[ed] an excessive risk to inmate health or

safety." *Scinto*, 841 F.3d at 225 (quoting *Farmer*, 511 U.S. at 837) (alterations in *Scinto*). Courts

have held that deliberate indifference "is an 'exacting' standard that requires more than a showing

of 'mere negligence or even civil recklessness[.]'" *Hendrick v. Wexford Health Servs., Inc.*, 141

F.Supp.3d 393, 402 (D.Md. 2015) (quoting *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir.

2014)). An official may avoid liability "if [he] responded reasonably to the risk, even if the harm

was not ultimately averted." *Farmer*, 511 U.S. at 844.

       i.    Deliberate Indifference to Ms. Gelin's Mental Health

      As an initial matter, the Court understands Plaintiffs' Amended Complaint to allege both

that Ms. Gelin received inadequate mental health care and that BCDC staff was deliberately

indifferent to Ms. Gelin's safety. ECF No. 12. The Court is, however, dubious of Plaintiffs'

allegations that the Correctional Officer Defendants—namely Defendant Salisbury, Rawlings,

Quisguard, White, Lux, Lightner, and Luckett—provided inadequate mental health care to Ms.

Gelin. Attached to Plaintiffs' Complaint is Baltimore County Department of Corrections

Regulation 4.2.08, which provides that "*Mental Health staff*" are responsible "for the detection,

evaluation and treatment of inmates with mental health concerns."[3] ECF No. 1-3 at 81-82

(emphasis added). Here, Plaintiffs have not alleged that the Correctional Officer Defendants

qualify as "Mental Health staff" as, at the time, Correct Care Solutions and its employees were

responsible for providing mental health services at BCDC. ECF No. 12 at ¶ 10. Because CCS was

hired to provide these services, the Correctional Officer Defendants were entitled to rely on the

CCS employees' decisions related to Ms. Gelin's mental health. *See Moses v. Stewart*, No. TDC-

15-3875, 2017 WL 4326008, at *5 (D.Md. Sept. 26, 2017) (In general, "prison non-medical staff

---

[3] As a part of these duties, the Mental Health staff, specifically qualified health care providers, must determine which inmates qualify for "special observation status." ECF No. 1-3 at 82.

are 'entitled to rely' on the competence and expertise of prison health care providers." (citation omitted)). Accordingly, any liability related to Ms. Gelin's mental health treatment (or lack thereof) lies with CCS and its employees, who have been dismissed from this action. Therefore, the Court grants the Motion in favor of the Correctional Officer Defendants as it relates to the deliberate indifference to Ms. Gelin's mental health treatment.

ii.    Deliberate Indifference to Ms. Gelin's Safety

The Court turns next to Plaintiffs' allegations that the Correctional Officer Defendants failed to take reasonable measures to ensure Ms. Gelin's safety. In their Amended Complaint, Plaintiffs allege that Ms. Gelin was in objective physical danger in the days leading up to her death as she was involved in two separate physical altercations—one of which required medical attention. ECF Nos. 12 at ¶ 49; 1-3 at 92. In addition to these physical attacks, Ms. Gelin was emotionally abused by, among other things, inmates screaming her name throughout the housing unit. ECF No. 12 at ¶¶ 51, 77. The Correctional Officer Defendants also subjectively understood that Ms. Gelin was in physical and emotional danger because, just hours before she took her life, Ms. Gelin expressed concerns about "her housing unit" and was observed "crying, screaming, and complaining of hearing voices." ECF No. 1-3 at 93. In spite of these complaints and worrisome behaviors, the Correctional Officer Defendants did not separate Ms. Gelin from her attackers. ECF No. 12 at ¶ 50. In fact, the Correctional Officer Defendants didn't even properly observe Ms. Gelin, as they failed to properly conduct watch tours and inmate checks within her unit. *Id.* at ¶¶ 64, 65-70. Thereafter, in the minutes before Ms. Gelin's death, these Defendants ignored other inmates "banging on the cell walls in an attempt to summon help." *Id.* at ¶¶ 59. Taken together, these allegations, at this stage of the litigation, plausibly allege that the Correctional Officer Defendants were deliberately indifferent to Ms. Gelin's safety. Accordingly, the Court finds that judgment on

10

the pleadings is not appropriate as to Counts I, II, III, and VI.

   iii.   Qualified Immunity as to the Correctional Officer Defendants

The Court's finding that Plaintiffs have plausibly alleged an Eighth Amendment violation does not, however, end the inquiry as the Correctional Officer Defendants alternatively allege that they are entitled to qualified immunity. "Qualified immunity bars § 1983 actions against government officials in their individual capacities 'unless (1) they violate a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time.'" *Barrett v. PAE Gov't. Servs., Inc.*, 975 F.3d 416, 428 (4th Cir. 2020) (quoting *District of Columbia v. Wesby*, 138 S.Ct. 577, 589 (2018) (cleaned up)). Thus, the qualified immunity analysis typically involves two inquiries. First, "whether the facts, when viewed in the light most favorable to the plaintiff, show that the official's conduct violated a constitutional right." *Henry v. Purnell*, 501 F.3d 374, 377 (4th Cir. 2007) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Second, whether the right at issue "'was clearly established'—that is, 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.; see also Thorpe v. Clarke*, 37 F.4th 926, 934 (4th Cir. 2022) ("It follows that when 'plaintiffs have made a showing sufficient to' demonstrate an intentional violation of the Eighth Amendment, 'they have also made a showing sufficient to overcome any claim to qualified immunity.'" (citation omitted)). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)); *see also District of Columbia v. Wesby*, 138 S.Ct. 577, 589 (2018) ("The 'clearly established' standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him.").

The Correctional Officer Defendants assert that they are entitled to quailed immunity as

11

"there was no case law that would have placed [them] on notice that their conduct violated a constitutional right." ECF No. 133-1 at 20. Exhibiting deliberate indifference to an inmate's safety is, however, a clearly established Eighth Amendment right. *See Farmer v. Brennan,* 511 U.S. 825, 837 (1994); *Makdessi v. Fields,* 789 F.3d 126, 133 (4th Cir. 2015); *Nichols v. Md. Corr. Institution—Jessup,* 186 F.Supp.2d 575, 581 (D.Md. 2002). As explained above, Plaintiffs have sufficiently alleged that the Correctional Officer Defendants violated Ms. Gelin's Eighth Amendment rights. The Correctional Officer Defendants have not alleged sufficient facts to support qualified immunity and are not entitled to qualified immunity at this stage in the litigation. In making this determination, the Court is also "mindful that the qualified immunity issue is dependent on a fact-intensive inquiry better conducted after the parties have had the opportunity to engage in discovery." *Taylor v. Somerset Cnty. Comm'rs,* No. RDB-16-0336, 2016 WL 3906641, at *8 (D.Md. July 19, 2016)).

Because Plaintiffs have plausibly alleged that the Correctional Officer Defendants were deliberately indifferent to Ms. Gelin's safety in violation of her Eighth Amendment rights, and the Correctional Officer Defendants are not entitled to qualified immunity, judgment on the pleadings is not appropriate and Counts I, II, III, and VI remain pending against Defendants Salisbury, Rawlings, Quisguard, White, Lux, Lightner, and Luckett.

3.  Defendant Richardson and the 42 U.S.C. § 1983 Claims

Defendants similarly argue that Defendant Deborah Richardson—Director of the Baltimore County Department of Corrections and Manager of BCDC—is entitled to judgment as Plaintiffs do not sufficiently allege that she violated Ms. Gelin's rights. ECF No. 133-1 at 14. It is well established that "[a] supervisor can only be held liable for the failings of a subordinate under certain narrow circumstances." *Green v. Beck,* 539 F.App'x 78, 80 (4th Cir. 2013). "Liability of

supervisory officials under § 1983 'is premised on a recognition that supervisory indifference or

tacit authorization of subordinates' misconduct may be a causative factor in the constitutional

injuries they inflict on those committed to their care.'" *Burley v. Balt. Police Dep't*, 422 F.Supp.3d

986, 1013 (D.Md. 2019) (quoting *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001)). To assert

supervisory liability claims in a § 1983 action, a Plaintiff must allege:

> (1) that the supervisor had actual or constructive knowledge that his subordinate
> was engaged in conduct that posed "a pervasive and unreasonable risk" of
> constitutional injury to citizens like the plaintiff; (2) that the supervisor's response
> to that knowledge was so inadequate as to show "deliberate indifference to or tacit
> authorization of the alleged offensive practices"; and (3) that there was an
> "affirmative causal link" between the supervisor's inaction and the particular
> constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 813.

"Establishing a pervasive and unreasonable risk of harm requires evidence that the conduct is

widespread, or has at least been used on several different occasions[.]" *Wilkins v. Montgomery*,

751 F.3d 214, 226-27 (4th Cir. 2014) (cleaned up).

Here, Plaintiffs § 1983 claims against Ms. Richardson fail because their Amended

Complaint does not sufficiently allege: (1) what actionable conduct Ms. Richardson sanctioned;

(2) how Ms. Richardson knew of such conduct; and (3) that such conduct was "pervasive." At

most, Plaintiffs allege that Ms. Richardson "knew of and approved of" practices whereby "the

safety of detainees suffering from mental illness and/or in need of medical attention were

deliberately ignored." ECF No. 12 at ¶¶ 97, 111, 123. These are legal conclusions. *See Young v.*

*City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001) (explaining that the "presence . . . of a

few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when

the facts alleged in the complaint cannot support a finding of deliberate indifference."). Moreover,

Plaintiffs have not alleged *any* facts that demonstrate *how* Ms. Richardson had knowledge—actual

13

or constructive—of the subordinate correctional officer's allegedly unconstitutional behavior.

Plaintiffs also fail to plead that any of the alleged unconstitutional conduct was "pervasive," as the factual recitation in the Amended Complaint relates only to Ms. Gelin and her term of incarceration. *See Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 206 (4th Cir. 2002) ("A plaintiff ordinarily . . . cannot satisfy his burden of proof by pointing to a single incident or isolated incidents[.]" (cleaned up)). For these reasons, Plaintiffs allegations are insufficient to support a claim of supervisory liability and the Court grants judgment on the pleadings in Ms. Richardson's favor on Counts I, II, III, and VI.

4.  Municipal Liability Claim Against Baltimore County and Ms. Richardson

Defendants further argue that they are entitled to judgment on Count IV—which alleges municipal liability against Baltimore County and Ms. Richardson—because "Plaintiffs plead no facts showing a plausible claim that any [policy], practice, or custom of the County caused any Eighth Amendment violation." ECF Nos. 133-1 at 18; 148 at 8-9. Although municipalities cannot claim immunity from suit, under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) they are only liable for their "*own* illegal acts." *Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379, 402 (4th Cir. 2014). As such, to assert a *Monell* claim, "the plaintiff must plausibly allege a constitutional harm that stems from the acts of a municipal employee 'taken in furtherance of some municipal policy or custom.'" *Shipley v. Disney*, No. SAG-21-3173, 2022 WL 2789076, at *9 (D.Md. July 15, 2022) (quoting *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984)); *Owens*, 767 F.3d at 402 ("Only if a municipality subscribes to a custom, policy, or practice can it be said to have committed an independent act, the *sine qua non* of *Monell* liability.").

A "policy or custom" can exist in four forms:

14

(1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999)). In this case, Plaintiffs claims arise under the fourth option, known as a condonation theory of *Monell* liability. To state a condonation claim under § 1983, plaintiffs "must point to a 'persistent and widespread practice[] of municipal officials,' the 'duration and frequency' of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their deliberate indifference." *Owens*, 767 F.3d at 402 (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1386-91 (4th Cir. 1987)). "Both knowledge and indifference can be inferred from the 'extent' of employees' misconduct. Sporadic or isolated violations of rights will not give rise to *Monell* liability; only 'widespread or flagrant' violations will." *Id.* at 402-03 (quoting *Spell*, 824 F.2d at 1387, 1391). The plaintiff must also allege that there is "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989).

The United States Court of Appeals for the Fourth Circuit has explained that "[a]lthough prevailing on the merits of a *Monell* claim is difficult, simply alleging such a claim is, by definition, easier." *Owens*, 767 F.3d at 403. In *Owens v. Baltimore City State's Attorney's Office*, the plaintiff alleged that the Baltimore Police Department maintained a custom, policy, and/or practice "of knowingly and repeatedly withholding and suppressing exculpatory evidence in criminal prosecutions." 767 F.3d at 403. These allegations were, the plaintiff pleaded, supported by "[r]eported and unreported cases from the period of time before and during the events complained of," as well as "numerous 'successful motions.'" *Id.* at 403. The Fourth Circuit explained that these

15

"brief, but non-conclusory" assertions "are factual allegations, the veracity of which could plausibly support a *Monell* claim" and which could "buttress his legal conclusion." *Id.* at 403. While noting that the plaintiff must *prove* these allegations to prevail on the claim, the Court determined that, "at this early stage in the proceedings," he had "pled sufficient factual context to survive a Rule 12(b)(6) dismissal." *Id.* at 404.

While a complaint need not state a "particularly detailed" recitation of the facts to support a *Monell* claim, dismissal is warranted where plaintiffs fail altogether to allege that a municipality knew of or condoned a widespread policy or practice. *Id.* at 403. In *Kline v. Wicomico County*, a case factually similar to the instant case, the estate of a deceased inmate alleged that correctional officers in the Wicomico County Detention Center had a widespread practice of failing to perform welfare checks. Case No. BPG-21-2653, 2022 WL 1538625, at *4 (D.Md. May 16, 2022). In finding that dismissal was appropriate, the Court explained that the complaint failed to plausibly allege that Wicomico County "was aware of ongoing constitutional violations by correctional officers" as the plaintiffs had simply pleaded, in a conclusory fashion, that the County "acted with deliberate indifference by allowing a widespread custom or policy of failing to perform the required checks." *Id.* Additionally, because the factual allegations in the complaint spanned "a period of only two hours on a single day," the Court concluded that the plaintiffs had failed "to set forth facts . . . with respect to defendant's condonation of the of the officers' alleged violations." *Id.* at 5.

Plaintiffs here identify approximately ten policies, customs, and/or practices which they allege BCDC used to deprive Ms. Gelin of her constitutional rights, including: (1) "failing to separate BCDC detainees who have had previous altercations"; (2) "failing to conduct formal inmate counts and watch tours"; and (3) "permitting detainees who are mentally ill, substance-

16

abusing/addicted, and/or potentially suicidal to be housed in cells that have the means and instrumentalities to commit suicide." *Id.* at ¶ 131-32. However, Plaintiffs' Amended Complaint fails to adequately allege that any purported unconstitutional behavior *was widespread* or *condoned* by Baltimore County and/or Ms. Richardson, as the factual recitation relates *only* to Ms. Gelin and *her* experiences at BCDC. ECF No. 12 at ¶¶ 30-90. The law in this District is clear that "[e]ven if County officers violated Plaintiffs' constitutional rights, these violations alone do not permit an inference of municipal culpability, which only attaches if Plaintiffs adequately plead a policy or custom." *Ulloa v. Prince George's Cnty., Md.*, No. DKC-15-0257, 2015 WL 7878956, at *6 (D.Md. Dec. 4, 2015).

In addition, Plaintiffs altogether fail to allege *how* Baltimore County and/or Ms. Richardson were aware of any widespread constitutional violations by the correctional officers. Indeed, Plaintiffs sole reference to any such awareness is limited to the conclusory allegation that these Defendants "expressly or tacitly encouraged, ratified and/or approved of the act and/or omissions . . . and knew that such conduct was unjustified and would result in violations of Constitutional [r]ights." *Id.* at ¶ 133.

In sum, Plaintiffs' Amended Complaint does not allege that the correctional officers engaged in widespread or on-going unconstitutional behavior or that the County and/or Ms. Richardson had knowledge of any such behavior. Accordingly, Plaintiffs have failed to plead that the County and/or Ms. Richardson condoned an unconstitutional custom, policy, or practice. This failure is fatal to their *Monell* claims and the Court grants judgment on the pleadings as to Count IV. *See Ullao*, 2015 WL 7878956, at 6 ("Plaintiffs' failure to plead facts plausibly alleging that the County has a custom, policy, or practice is fatal to their *Monell* claims.").

**C. The State Law Claims (Counts VII-X)**

1. <u>Public Official Immunity As to the Correctional Officer Defendants</u>

In addition to their § 1983 and state constitutional claims, Plaintiffs also allege the following state law claims against the Correctional Officer Defendants: Negligence—Survival (Count VII); Gross Negligence—Survival (Count VIII); Negligence—Wrongful Death (Count IX). ECF No. 12 at ¶¶ 154-179. The Correctional Officer Defendants argue that these claims are barred as they are entitled to public official immunity. ECF No. 133-1 at 6-9. "Maryland Courts have long recognized the common law doctrine of public official immunity."[4] *Johnson v. Balt. Police Dep't.*, 452 F.Supp.3d 283, 297 (D.Md. 2020). A representative of the government is "entitled to public official immunity when: (1) the representative is acting as a public official; (2) the tortious conduct occurred while the representative was performing discretionary rather than ministerial acts; and (3) the representative acted without malice or gross negligence." *Washington v. Maynard*, No. GLR-13-3767, 2016 WL 865359, at *8-9 (D.Md. March 7, 2019) (citing *Cooper v. Rodriguez*, 443 Md. 680, 722-23 (2015)). Maryland law is clear that prison guards and correctional officials are public officials. *Cooper v. Rodriguez*, 443 Md. 680, 713 n.13 (2015). Accordingly, the Court readily concludes that the Correctional Officer Defendants are public officials.

Setting aside whether the Correctional Officer Defendants actions were discretionary or ministerial, the Court finds that Plaintiffs have sufficiently alleged that the Correctional Officer

---

[4] This common law doctrine has, to some extent, been codified. *See* Md. Code, Courts and Judicial Proceedings Article, § 5-507. The Maryland Supreme Court has reasoned "that the purpose of these provisions 'was to codify existing public official immunity, and not to extent the scope of qualified immunity beyond its Maryland common law boundaries.'" *Lovelace v. Anderson*, 366 Md. 690, 704 (2001) (quoting *Ashton v. Brown*, 339 Md. 70, 116 n.23 (1995)).

Defendants acted with gross negligence. The Supreme Court of Maryland[5] has explained that gross negligence is "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Cooper*, 443 Md. at 708 (quoting *Barbre v. Pope*, 402 Md. 157, 187 (2007)). Gross negligence is "something *more* than simple negligence, and likely more akin to reckless conduct." *Taylor v. Harford Cnty. Dep't. of Soc. Servs.*, 384 Md. 213, 229 (2004). Whether gross negligence exists "is usually a question for the jury and is a question of law only when reasonable [people] could not differ as to the rational conclusion to be reached." *Romanesk v. Rose*, 248 Md. 420, 423 (1968) (citations omitted); *see also Taylor*, 384 Md. at 229 ("Ordinarily, unless the facts are so clear as to permit a conclusion as a matter of law, it is for the trier of fact to determine whether a defendant's negligent conduct amounts to gross negligence." (citations omitted)).

In the instant case, Plaintiffs allege that these Defendants refused to rehouse Ms. Gelin after she was "jumped by two other inmates." ECF No. 12 at ¶¶ 49-50. This altercation was sufficiently serious, as Ms. Gelin subsequently received medical attention. *Id.* at ¶ 49. Shortly thereafter, Ms. Gelin complained that inmates on her unit were harassing her by "screaming her name and yelling." *Id.* at ¶ 51. After the Defendant Officers made contact with Ms. Gelin, they allegedly noticed that she was in poor mental health as she was "crying, screaming, and complaining of hearing voices." *Id.* Despite Ms. Gelin's complaints and worrisome behavior, she was not relocated to another housing unit. Plaintiffs also allege that the Correctional Officer Defendants deliberately ignored the pleas of other inmates who, apparently aware of Ms. Gelin's

---

[5] At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Appeals of Maryland to the Supreme Court of Maryland. The name change took effect on December 14, 2022.

impending death, were "continuously scream[ing] while banging on the cell walls. *Id.* at ¶ 59.

Drawing all reasonable inferences in their favor, the Court finds that Plaintiffs have adequately stated that the Correctional Officer Defendants disregarded the excessive risk to Ms. Gelin's health and safety. At this stage of the litigation, these allegations are sufficient to constitute gross negligence. Therefore, the Court finds that Defendants Salisbury, Rawlings, Quisguard, White, Lux, Lightner, Luckett are not entitled to public official immunity at this time and Counts VII, VIII, and IX will stand.

### 2. Counts VII, VIII, IX, and X Against Ms. Richardson

Unlike the Correctional Officer Defendants, Ms. Richardson is entitled to public official immunity even at this early stage in the proceedings. As the Director of the Baltimore County Department of Corrections and Manager of BCDC, Ms. Richardson is a public official. *See Cullen v. Somerset Cnty.*, No. WMN-10-055, 2010 WL 2132794, at \*8 (D.Md. May 25, 2010) ("Maryland law is clear that a prison warden is a public official."). Plaintiffs argue that their Amended Complaint properly alleges that Ms. Richardson acted with malice or gross negligence. ECF No. 145-1 at 7-8. However, all of Plaintiffs allegations related to Ms. Richardson are conclusory and offer no specifics as to *how* Ms. Richardson acted with malice or gross negligence. *See e.g.*, ECF No. 12 at ECF No. 12 at ¶¶ 157, 165, 174, 184 (Asserting that Ms. Richardson "knew of and approved of the practices of other Defendants whereby the safety of detainees suffering from mental illness and immediate medical needs were and would be deliberately ignored."). Under Maryland law, "[t]o overcome a motion raising governmental immunity, the plaintiff must allege with some clarity and precision those facts which make the act malicious [or grossly negligent]." *Manders v. Brown*, 101 Md.App. 191, 216, *cert. denied*, 336 Md. 592 (1994) (citations omitted). Plaintiffs here have failed to do so. Accordingly, the Court grants judgment on the pleadings in

Ms. Richardson's favor on Counts VII, VIII, IX, and X.

### 3. Count X Against Baltimore County

Finally, Defendants argue that Baltimore County has governmental immunity and is therefore entitled to judgment on Count X. ECF No. 133-1 at 9-11. "Under Maryland common law, a local government is immune from tort liability when it functions in a 'governmental' capacity, but it enjoys no such immunity when it is engaged in activities that are 'proprietary' or 'private' in nature." *Zilichikhis v. Montgomery Cnty.*, 223 Md.App. 158, 192 (2015); *see also Austin v. City of Balt.*, 286 Md. 51, 53 (1979) ("Unlike the total immunity from tort liability which the State and its agencies possess, the immunity of counties, municipalities and local agencies is limited to tortious conduct which occurred in the exercise of a 'governmental' rather than a 'proprietary' function."). Maryland Courts have explained that an activity is considered governmental in nature "where the act in question is sanctioned by legislative authority, is solely for public benefit, with no profit or emolument inuring to the municipality, and tends to benefit the public health and promote the welfare of the whole public, and has in it no element of private interest." *Rios v. Montgomery Cnty.*, 386 Md. 104, 128-29 (2005) (cleaned up). To determine whether the operation of a detention center qualifies as a "government function," courts analyze "(1) the legislative authority by which the [c]ounty operated and (2) the extent to which the [c]ounty delegated authority to private entities." *Malone v. Wicomico Cnty.*, No. SAG-19-2412, 2020 WL 1331931, at *4 (D.Md. 2020) (citation omitted).

Here, Baltimore County "bears the burden of demonstrating" that it is entitled to governmental immunity, because it is "akin to an affirmative defense." *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014). However, the pleadings and exhibits thereto provide no information about the legislative authority by which BCDC operates, nor about the particular arrangement

between BCDC and Baltimore County. The Court notes that much of the County's Motion is simply conclusory recitations of the law, lacking substantive analysis. Without this information, the Court cannot determine whether Baltimore County's operation of BCDC qualifies as a government function. Accordingly, at this stage of the litigation, the Court finds that Baltimore County has failed to plead facts sufficient to entitle it to governmental immunity. As such, Count X remains pending against the County.

### CONCLUSION

For the reasons set forth in this Memorandum Opinion, Defendants' Motion (ECF No. 133) is GRANTED IN PART, DENIED IN PART. Judgment on the pleadings is granted as to Counts IV and V. The Court further enters judgment for Ms. Richardson on Counts I, II, III, VI, VII, VIII, IX, and X. All other relief is denied consistent with this Opinion of the Court. A separate Order will follow.

Date: _13 March 2023_

A. David Copperthite
United States Magistrate Judge