IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| EDWARD GELIN, *et al.*, | * | |
| Plaintiffs, | * | |
| vs. | * | Civil Action No. ADC-16-3694 |
| BALTIMORE COUNTY, MARYLAND, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Defendants Baltimore County, Maryland, Michael Salisbury, Michelle Rawlins, Nicholas Quisguard, Myesha White, Joseph Lux, Gregory Lightner, Carl Luckett, and Deborah R. Richardson (collectively "County Defendants") moved this Court to amend its findings and judgment in response to their Motion for Judgment on the Pleadings. ECF No. 158.[1] As this Court explained in its Order dated April 13, 2023, the substance of Defendants' Motion makes clear they are seeking reconsideration of this Court's Order dated March 13, 2023, and Rule 54(b) of the Federal Rules of Civil Procedure represents the proper procedural posture here. ECF No. 159. After considering County Defendants' Motion and the responses thereto (ECF Nos. 158, 160), the Court finds that no hearing is

---

[1] On September 10, 2018, this case was referred to United States Magistrate Judge A. David Copperthite for all proceedings in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 (D.Md. 2021). ECF No. 60.

1

necessary. Loc.R. 105.6 (D.Md. 2021). For the reasons stated herein, County Defendants' Motion is DENIED.

## FACTUAL BACKGROUND

On November 4, 2013, Ms. Ashleigh Gelin began serving a one-year sentence at the Baltimore County Detention Center ("BCDC") for a theft scheme conviction. ECF No. 12 at ¶ 30. During intake, Ms. Gelin was evaluated by several healthcare professionals employed by Correct Care Solutions ("CCS"), a private company retained to provide healthcare services at BCDC. *Id.* at ¶¶ 30-51. The CCS employees noted that Ms. Gelin suffered from various mental illnesses (including bipolar disorder, depression, anxiety, borderline personality disorder, and psychosis) and was actively battling benzodiazepine and opiate addictions. *Id.* at ¶¶ 31-35, 42, 47. Despite these mental health concerns, Ms. Gelin was not timely seen by a mental health professional or placed on "special observation status" as required by the facilities' regulations. ECF Nos. 1-3 at 82; 12 at ¶ 40. When she was ultimately seen by a CCS mental health employee on November 13, 2013, Ms. Gelin was not referred for any mental health services or treatment. ECF Nos. 1-3 at 91-92; No. 12 at ¶ 48.

As Ms. Gelin's mental illnesses went untreated, her behavior and demeanor at BCDC deteriorated. ECF Nos. 1-3 at 90. On November 5, 2013, her first full day at the facility, an anonymous inmate reported Ms. Gelin for distributing smuggled suboxone to other inmates. *Id.* The very next day, she was again reported for offering suboxone in exchange for commissary items and was "locked in her dorm for [eight] hours . . . for not making her bunk after being told to do so [three] times." *Id.* at 90-91. Ms. Gelin was

2

eventually "placed in solitary confinement, where she was bullied and harassed by prisoners in nearby cells." ECF No. 12 at ¶ 3. While in this housing unit, she was involved in two physical altercations. ECF No. 1-3 at 92. During the second altercation, two inmates struck Ms. Gelin with closed fists in the face. *Id.* at 92. Ms. Gelin received medical attention for her injuries. ECF No. 12 at ¶ 49. Despite these issues, Ms. Gelin was not relocated to another housing unit within BCDC. *Id.* at ¶ 50.

On November 14, 2013, correctional officers requested an additional mental health appointment for Ms. Gelin after observing her "crying, screaming and complaining of hearing voices." ECF No. 1-3 at 27, 93. Later the same afternoon, a CCS employee reevaluated Ms. Gelin who expressed concerns about "her current housing unit" and lack of medication. *Id.* Ms. Gelin's appearance was noted as "disheveled" and her mood "anxious." *Id.* at 27-28. Despite these observations, the CCS employee did not order that Ms. Gelin begin any mental health services or treatment. *Id.* Several hours later, Ms. Gelin took her own life. ECF No. 12 at ¶¶ 55, 58. Although other inmates attempted to summon help by "continuously scream[ing]" and "banging on the cell walls," BCDC staff members did not respond in time to save Ms. Gelin. *Id.* at ¶¶ 58-59.

### Procedural Background

Ms. Gelin's parents, Plaintiffs Edward and Deborah Gelin ("Plaintiffs" or "the Gelins"), filed suit on behalf of themselves and as personal representatives of Ms. Gelin's Estate on November 11, 2016. ECF No. 1. Plaintiffs filed an Amended Complaint against Baltimore County, Correct Care Solutions, Deborah Richardson, Kyle Shuman, Roselor Saint Fleur, Victoria Titus, Jennifer Sevier, Diane Bahr, Michael Salisbury, Michelle

3

Rawlins, Nicholas Quisguard, Myesha White, Joseph Lux, Gregory Lightner, Carl Luckett, and John and Jane Does 1-8 on February 8, 2017. ECF No. 12. They alleged the following counts: violations of Ms. Gelin's constitutional rights under 42 U.S.C. § 1983 against all individually named Defendants (Count I-III); violations of Ms. Gelin's constitutional rights under § 1983 against Baltimore County and Deborah Richardson (Count IV); violations of the Maryland Declaration of Rights against all individually named Defendants (Counts V-VI); negligence, gross negligence, and wrongful death against all individually named Defendants (Counts VII-IX); and negligent hiring, retention and/or supervision against Baltimore County, Deborah Richardson, Correct Care Solutions, and John and Jane Doe 1-8 (Count X). *Id.*

CCS filed a Motion to Dismiss, or in the alternative, for Summary Judgment on March 7, 2017. ECF No. 17. The Court granted this Motion on September 5, 2017, finding that Plaintiffs failed to sufficiently plead several elements of a negligent hiring, retention and/or supervision claim against CCS. ECF No. 17, 24. Thereafter, following a remand from the United States Court of Appeals for the Fourth Circuit, the individually named CCS employees, Defendants Shuman, Saint Fleur, Bahr, Titus, and Sevier, filed a renewed Motion to Dismiss alleging that they had not been served with process.[2] ECF No. 127. Plaintiffs contemporaneously filed a Motion for Extension of Time to Effectuate Service

---

[2] The Court originally granted the CCS Defendants' Motion to Dismiss on August 1, 2018, finding that Plaintiffs could not show good cause for failing to serve process within the deadline set by Federal Rule of Civil Procedure 4(m). ECF No. 55. The United States Court of Appeals for the Fourth Circuit agreed that Plaintiffs could not show good cause but remanded for this Court to determine whether a discretionary extension of the service of process deadline was appropriate. ECF No. 117, 118.

4

of Process. ECF No. 126. On February 9, 2023, this Court, finding no reasoned basis to extend the service of process deadline, granted the CCS Defendants' Motion to Dismiss and denied Plaintiffs' Motion to Extend Time. ECF No. 146. As a result of these rulings, CCS and the individually named CCS employees have been entirely dismissed from this action.

On October 18, 2022, County Defendants filed a Motion for Judgment on the Pleadings. ECF No. 133. Plaintiffs responded in opposition on January 27, 2023. ECF No. 145. County Defendants replied on February 10, 2023. ECF Nos. 145, 148. On March 13th, 2023, this Court responded to Defendants' Motion with a Memorandum opinion, granting the Motion in part, and denying it in part. ECF No. 149. Specifically, this Court granted judgment in favor of all Defendants on Counts IV and V; judgment in favor of Defendants Salisbury, Rawlins, Quisguard, White, Lux, Lightner, and Luckett on Counts I, II, III, and VI; and judgment in favor of Defendant Richardson on Counts I, II, III, VI, VII, VIII, IX, and X. ECF No. 150. However, this Court allowed several Counts to proceed against the Defendants. These included Counts I, II, III, and VI against Defendants Salisbury, Rawlins, Quisguard, White, Lux, Lightner, and Luckett; Counts VII, VIII, IX against Defendants Salisbury, Rawlins, Quisguard, White, Lux, Lightner, and Luckett; and Count X against Defendant Baltimore County. *Id.*

Next, on April 10, 2023, Defendants brought a Motion to Amend Findings and Judgment under Rule 52 of the Federal Rules of Civil Procedure. ECF No. 158. The substance of Defendants' Motion, however, makes plain that they sought reconsideration of this Court's March 13, 2023 Order. In response, on April 13, 2023, this Court issued an

5

order which clarified the proper procedural posture existing under Rule 54(b), and further directed Plaintiffs to reply to Defendants' arguments concerning the relevant negligence claims against the Defendant Correctional Officers. ECF No. 159. However, before this Court could fully respond to Defendants' arguments, Defendants further erred by filing a premature notice of appeal to the Fourth Circuit. ECF No. 161. In response, the Fourth Circuit reaffirmed this Court's jurisdiction to rule on the remaining issues before it and is currently holding Defendants' appeal in abeyance until this Court proceeds to do so. ECF No. 168.

## DISCUSSION

### A. Standard of Review

Motions for reconsideration of orders that do not constitute final judgments in a case are governed by Federal Rule of Civil Procedure 54(b). *Fayetteville Inv. v. Com. Builders, Inc.*, 936 F.2d 1462, 1472 (4th Cir. 1991); *In re Marriott Intl. Inc.*, MDL No. 19-md-2879, 2021 WL 1516028, at *2 (D.Md. April 16, 2021). Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time." Consequently,

> motions for reconsideration of orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment, but instead, are *committed to the discretion of the district court*. Thus, whereas reconsideration of final judgments are appropriate only (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice, *reconsideration of interlocutory orders can be based on many other rationales*. These rationales include those listed above, and the rationale of accommodating judicial mistake, inadvertence, surprise or

excusable neglect; or any other reason justifying relief from the operation of the judgment.

*Nat'l Cas. Co. v. Lockheed Martin Corp.*, Civ. No. AW-05-1992, 2010 WL 1490027, at *2 (D.Md. April 12, 2010) (cleaned up) (emphasis added). These motions are not, however, "the proper place to relitigate a case after the court has ruled against a party, as mere disagreement with a court's rulings will not support such a request." *Lynn v. Monarch Recovery Mgmt., Inc.*, 953 F.Supp.2d 612, 620 (D.Md. 2013) (citation omitted); *see also CytImmune Scis., Inc. v. Paciotti*, No. PWG-16-1010, 2016 WL 6879942, at *2 (D.Md. Nov. 22, 2016) (A motion for reconsideration "is not a license for a losing party's attorney to get a second bite at the apple." (citation omitted)).

Defendants request this Court reconsider its findings as they relate to Defendants' Motion for Judgment on the Pleadings. Specifically, County Defendants previously filed a Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c). ECF No. 133. A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed.R.Civ.P. 12(c). Motions for judgment on the pleadings are subject to the same standards as motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014) (citing *Butler v. United States*, 702 F.3d 749, 751-52 (4th Cir. 2012)).

Accordingly, a district court "evaluating a motion for judgment on the pleadings must assume that the well-pleaded facts alleged in the complaint are true and must draw all reasonable factual inferences in favor of the non-moving party." *Hamilton Jewelry, LLC v. Twin City Fire Ins. Co., Inc.*, 560 F.Supp.3d 956, 961 (D.Md. 2021). When

7

deciding motions under Rule 12(c), courts may also consider documents "attached as an exhibit to a pleading . . . so long as they are integral to the complaint and authentic." *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013). "A Rule 12(c) motion should be granted when the pleadings 'fail to state any cognizable claim for relief, and the matter can, therefore, be decided as a matter of law.'" *Hamilton Jewelry, LLC*, 560 F.Supp.3d at 961 (quoting *Rock for Life-UMBC v. Hrabowski*, 594 F.Supp.2d 598, 605 (D.Md. 2009)).

**B. The State Law Negligence Claims (Counts VII & IX)**

1. <u>Public Official Immunity as to the Correctional Officer Defendants</u>

In their Motion, Defendants requested that this Court amend its findings and judgment on all Counts brought against them in this proceeding. ECF No. 158. This Court declines to do so. In accordance with this Court's prior Order (ECF No. 150) and the Fourth Circuit's Opinion (ECF No. 168), the Court will clarify its findings as it relates to the negligence claims in Counts VII and IX brought against Correctional Officer Defendants Salisbury, Rawlins, Quisguard, White, Lux, Lightner, and Luckett. All other Counts against Defendants will proceed according to this Court's Order dated March 13, 2023. ECF No. 150. Here, Plaintiffs allege two state law claims of negligence against the Correctional Officer Defendants in Count VII and Count IX. ECF No. 12 at ¶¶ 154-179. The Correctional Officer Defendants argue that these claims are barred as they are entitled to public official immunity. ECF No. 158-1 at 13-16. "Maryland Courts have long

recognized the common law doctrine of public official immunity."[3] *Johnson v. Balt. Police Dep't*, 452 F.Supp.3d 283, 297 (D.Md. 2020).

A representative of the government is "entitled to public official immunity when: (1) the representative is acting as a public official; (2) the tortious conduct occurred while the representative was performing discretionary rather than ministerial acts; and (3) the representative acted without malice or gross negligence." *Washington v. Maynard*, No. GLR-13-3767, 2016 WL 865359, at *8-9 (D.Md. March 7, 2019) (citing *Cooper v. Rodriguez*, 443 Md. 680, 722-23 (2015)). Maryland law is clear that prison guards and correctional officials are public officials. *Cooper v. Rodriguez*, 443 Md. 680, 713 n.13 (2015). Accordingly, the Court concludes that the Correctional Officer Defendants are public officials.

Next, the relevant question involves whether the Correctional Officer Defendants' actions, in the context of Plaintiffs' negligence claims in Count VII and Count IX, were discretionary or ministerial. "Whether a public official's actions are ministerial or discretionary is a question of law for the court." *Baltimore Police Dep't v. Cherkes*, 140 Md. App. 282, 328 (2001). "[A]n act falls within the discretionary function of a public official if the decision which involves an exercise of his personal judgment also includes, to more than a minor degree, the manner in which the police power of the State should be

---

[3] This common law doctrine has, to some extent, been codified. *See* Md. Code, Courts and Judicial Proceedings Article, § 5-507. The Maryland Supreme Court has reasoned "that the purpose of these provisions 'was to codify existing public official immunity, and not to extend the scope of qualified immunity beyond its Maryland common law boundaries.'" *Lovelace v. Anderson*, 366 Md. 690, 704 (2001) (quoting *Ashton v. Brown*, 339 Md. 70, 116 n.23 (1995)).

utilized." *Id.* at 328–29 (quoting *James v. Prince George's Cnty.*, 288 Md. 315, 327 (1980), *superseded by rule on other grounds*, *Prince George's Cnty. v. Fitzhugh*, 308 Md. 384 (1987)). In *Livesay*, the Court of Appeals of Maryland emphasized that the term discretion denotes freedom to act according to one's judgment in the absence of a hard and fast rule. *Livesay v. Balt. Cnty.*, 384 Md. 1, 16 (2004). Ministerial acts, on the other hand, "involve duties in respect to which nothing is left to discretion as distinguished from those where the official has the freedom and authority to make decisions and choices." *State ex rel. Clark v. Ferling*, 220 Md. 109, 113 (1959).

Here, as Plaintiffs explain in their Opposition to Defendants' Motion for Judgment on the Pleadings, their Amended Complaint states eight sets of facts that Plaintiffs claim amount to "ministerial tortious acts or omissions[.]" ECF No. 145-1 at 6. As to the negligence counts here, Plaintiffs claim those eight sets of facts represent "failures by the Defendants in their ministerial duties." *Id.* The alleged conduct includes "the failures of Defendants to provide a psychiatric evaluation within seventy-two (72) hours of referral or to place her on special observation status, placing her in a cell by herself, failing to provide Ashleigh with medication, and failing to conduct a formal inmate count[.]" *Id.* at 7. Plaintiffs also support their claims that this represents ministerial conduct with references to policies and directives of the Baltimore County Department of Corrections. *Id.* at 6-7; ECF No. 1-3 at 81-89.

Accepting the well-plead allegations here as true, and drawing all inferences in the Plaintiffs' favor, Plaintiffs have offered sufficient well-plead facts to survive Defendants' Motion – at least at this stage. *See, e.g., Hamilton Jewelry, LLC*, 560 F.Supp.3d at 961

10

(stating that a motion for judgment on the pleadings must assume the well-plead facts in the complaint are true and must draw all reasonable factual inferences in the non-moving party's favor). Plaintiffs point to the Defendants' alleged violation of several policies that they claim represent ministerial conduct. In addition to the above examples and supporting exhibits, Plaintiffs reason that "[j]ail officials carry out specific acts that are incumbent upon them through established rules and regulations." ECF No. 145-1 at 7.

In their original Motion for Judgment on the Pleadings and related memoranda, Defendants deny that the conduct alleged here is ministerial, claim that the alleged lapses on Defendants' part never occurred, and that the alleged conduct represented responsibilities of the County's Medical contractor, not the Defendants themselves. ECF No. 148 at 4-7. While Defendants' arguments may be viable as factual disputes, Defendants have simply not demonstrated that Plaintiffs have failed to "to state any cognizable claim for relief, and the matter can, therefore, be decided as a matter of law." *Hrabowski*, 594 F.Supp.2d at 605.

Taking Plaintiffs' arguments, together with their proffered exhibits, they have adequately pled that Defendants' alleged misconduct involved their failure to perform "duties in respect to which nothing is left to discretion." *See, e.g., Ferling*, 220 Md. at 113. While the Court could decide differently at a later stage, making such a fact-dependent determination under the present motion would be inappropriate, and Defendants request for Public Official Immunity as to Plaintiff's negligence claims is therefore DENIED.

In sum, the Court finds that Defendants Salisbury, Rawlins, Quisguard, White, Lux, Lightner, Luckett are not entitled to public official immunity at this time and the claims

11

against them in Counts VII and IX will proceed.

## CONCLUSION

For the reasons set forth in this Memorandum Opinion, Defendants' Motion (ECF No. 158) is DENIED. All other relief is denied consistent with this Opinion of the Court. A separate Order will follow.

Date: 27 January 2025

A. David Copperthite
United States Magistrate Judge